1  Gregory N. Karasik - State Bar No. 115834
   Spiro Moss LLP
2  11377 W. Olympic Boulevard, 5th Floor
   Los Angeles, California 90064-1683
3  Tel. (310) 235-2468, Fax (310) 235-2456
   greg@spiromoss.com
4
   Sahag Majarian, II - State Bar No. 146621
5  Law Offices of Sahag Majarian, II
   18250 Ventura Blvd.
6  Tarzana, California 91356
   Tel. (818) 609-0807, Fax (818) 609-0892
7  sahagii@aol.com
8  Attorneys for Plaintiff
   FRANCISCO MARENCO
9

10                **UNITED STATES DISTRICT COURT**

11               **CENTRAL DISTRICT OF CALIFORNIA**

12
13  FRANCISCO MARENCO, individually )   Case No. CV 10-8022 DMG (VBKa)
    and on behalf of other persons similarly )
14  situated,                             )
                                          )   **MEMORANDUM OF POINTS AND**
15                          Plaintiff,    )   **AUTHORITIES IN SUPPORT OF**
                                          )   **PLAINTIFF'S MOTION FOR**
16          vs.                           )   **PRELIMINARY APPROVAL OF**
                                          )   **CLASS ACTION SETTLEMENT**
17  VISA INC., a Delaware corporation,    )
                                          )
18                          Defendant.    )   Date: July 11, 2011
                                          )   Time: 9:30 a.m.
19  _____      )   Ctrm: 7

20
21
22
23
24
25
26
27
28

---

# **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LITIGATION HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF SETTLEMENT TERMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

THE SETTLEMENT MERITS PRELIMINARY APPROVAL . . . . . . . . . . . . . . . . 4

     A.    Plaintiff's Claims Merit Class Action Treatment . . . . . . . . . . . . . . . . . . . 5

          1.    Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          2.    Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          3.    Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          4.    Adequate Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          5.    Predominance of Common Questions . . . . . . . . . . . . . . . . . . . . . 9

          6.    Superiority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     B.    The Settlement is Fair, Reasonable and Adequate . . . . . . . . . . . . . . . . . . 12

          1.    Gross Settlement Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          2.    Formula for Allocation of Settlement Benefits . . . . . . . . . . . . . . 17

          3.    Attorney's Fees and Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

          4.    Incentive Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

          5.    The Class Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

THE COURT SHOULD SCHEDULE A FAIRNESS HEARING . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

## CASES

Acosta v. Trans Union LLC
(C.D. Cal. 2007) 243 F.R.D. 377 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Amchem Products Inc. v. Woodward
(1997) 521 U.S. 591 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Armstrong v. Board of School Directors of the City of Milwaukee
(6th Cir. 1980) 616 F.2d 305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Baldwin & Flynn v. Nat'l Safety Associates
(N.D. Cal. 1993) 149 F.R.D. 598 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Blackie v. Barrack
(9th Cir. 1975) 524 F.2d 891 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 9

Battle v. Liberty National Life Ins. Co.
(M.D. Ala. 1991 ) 770 F.Supp. 1499 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.
(9th Cir. 1990) 917 F.2d 1171 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Deteresa v. American Broadcasting Companies, Inc.
(9th Cir. 1997) 121 F.3d 460 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Eisen v. Carlisle & Jacquelin
(1974) 417 U.S. 156 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Elkins v. Equitable Life Ins. Of Iowa
(M.D. Fla. 1998) 1998 WL 133747 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Flanagan v. Flanagan
(2002) 27 Cal.4th 766 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Frio v. Superior Court
(1988) 203 Cal.App.3d 1480 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Glass v. UBS Financial Services, Inc.
(N.D. Cal. 2007) 2007 WL 221862 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Hanlon v. Chrysler Corp.
(9th Cir. 1998) 150 F.3d 1011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 9, 10

Hanon v. Dataproducts Corp.
(9th Cir. 1992) 976 F.2d 497 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Activision
(N.D. Cal. 1985) 621 F.Supp. 415 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Cendant Corp., Derivative Action Litigation
(D. N.J. 2002) 232 F.Supp.2d 327 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Elkins v. Equitable Life Ins. Of Iowa
   (M.D. Fla. 1998) 1998 WL 133747 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Immune Response Securities Litigation
   (S.D. Cal. 2007) 497 F.Supp.2d 1166 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In Re Mercury Interactive Securities Litigation
   (9th Cir. 2010) 618 F.3d 988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

In re Mfrs. Life Ins.
   (S.D. Cal. 1998) 1998 WL 1993385 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Michael Milken & Assocs. §. Litig.
   (S.D. N.Y. 1993) 150 F.R.D. 57 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

In re Southern Ohio Correctional Facility
   (S.D. Ohio 1997) 175 F.R.D. 270 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

In re Static Random Access Memory Antitrust Litigation
   (N.D. Cal. 2009) 264 F.R.D. 603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Syncor ERISA Litigation
   (9th Cir. 2008) 516 F.3d 1095 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Tableware Antitrust Litigation
   (N.D. Cal. 2007) 241 F.R.D. 644 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ingram v. The Coca-Cola Co.
   (N.D. Ga. 2001) 200 F.R.D. 685 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Ion Equipment Corp. v. Nelson
   (1980) 110 Cal.App.3d 868 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Lewis v. Gross
   (E.D. N.Y. 1986) 663 F.Supp. 1164 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Lewis v. Starbucks Corp.
   (E.D. Cal. 2008) 2008 WL 4196690 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Linney v. Cellular Alaska Partnership
   (N.D. Cal. 1997) 1997 WL 450064 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.
   (9th Cir. 2001) 244 F.3d 1152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Mendoza v. United States
   (9th Cir. 1980) 623 F.2d 1338 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Mirfasihi v. Fleet Mortgage Corp.
   (7th Cir. 2004) 356 F.3d 781 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Mourning v. Family Publications Service, Inc.
   (1973) 411 U.S. 356 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Mullane v. Central Hanover Bank & Trust Co.
(1950) 339 U.S. 306 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Murray v. GMAC Mortgage Corp.
(N.D. Ill. 2007) 2007 WL 1100608 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Officers for Justice v. Civil Service Commission of City and County of San Francisco
(9th Cir. 1982) 688 F.2d 615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Paul, Johnson, Alston & Hunt v. Graulty
(9th Cir. 1989) 886 F.2d 268 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Riordan v. Smith Barney
(N.D. Ill. 1986) 113 F.R.D. 60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Silber v. Mabon
(9th Cir. 1994) 18 F.3d 1449 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Six Mexican Workers v. Arizona Citrus Growers
(9th Cir. 1990) 904 F.2d 1301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Staton v. Boeing Co.
(9th Cir. 2003) 327 F.3d 938 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 12, 13, 19

Strube v. American Equity Inv. Life Ins. Co.
(M.D. Fla. 2005) 226 F.R.D. 688 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Texas v. American Blastfax, Inc.
(W.D. Tex. 2000) 121 F.Supp.2d 1085 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Thomasson v. GC Services, Ltd. Partnership
(S.D. Cal. 2011) 2011 WL 1339063 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Valentino v. Carter-Wallace
(9th Cir. 1996) 97 F.3d 1227 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Van Bronkhorst v. Safeco Corp.
(9th Cir. 1976) 529 F.2d 943 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Van Vranken v. Atl. Richfield Co.
(N.D. Cal. 1995) 901 F. Supp. 294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Vizcaino v. Microsoft Corp.
(9th Cir. 2002) 290 F.3d 1043 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Wang v. Chinese Daily News
(C.D. Cal. 2005) 231 F.R.D. 602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

Zinser v. Accufix Research Institute, Inc.
(9th Cir. 2001) 253 F.3d 1188, 1189 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5, 6
Rule 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Rule 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Rule 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Rule 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Rule 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10, 11, 12, 21
Rule 23(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Rule 23(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Rule 23(c)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22
Rule 23(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
Rule 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 12, 13
Rule 23(e)(C)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Rule 23(e)(C)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Rule 23(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## STATUTES

Cal. Penal Code Section 632 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 14

Cal. Penal Code Section 637.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 14

Fla. Stat. Ch. 934.03 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fla. Stat. Ch. 934.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

N.H. Rev. Stat. Ann. § 570-A:2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

N.H. Rev. Stat. Ann. § 570-A:11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Nev. Rev. Stat Ann. § 200.620 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Nev. Rev. Stat. Ann. § 200.690 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Md. Code Ann., Cts. & Jud. Proc., § 10-402 . . . . . . . . . . . . . . . . . . . . . 7

Md. Code Ann., Cts. & Jud. Proc., § 10-410 . . . . . . . . . . . . . . . . . . . . . 7

Wash. Rev. Code Section 9.73.030(1) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Wash. Rev. Code Section 9.73.060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## OTHER AUTHORITIES

Manual for Complex Litigation § 1.46 (West 1977) . . . . . . . . . . . . . . . . . . . . . . . . 4

Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial
    § 10:573 (The Rutter Group 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# **INTRODUCTION**

This class action lawsuit arises out of the allegedly unlawful recording of telephone conversations by defendant Visa Inc. ("Visa"). Plaintiff Franciso Marenco ("Plaintiff") alleges that Visa recorded thousands of telephone calls to customer service representatives, made by consumers in the states of California, Florida, Maryland, Nevada, New Hampshire or Washington (the "Covered States"), who reasonably expected that no one would be recording their conversation with the customer service representative they spoke with, without disclosing that their telephone calls would be recorded. Plaintiff contends that recording of those telephone calls without consent violated the laws of the Covered States and every customer who had a telephone call recorded without their consent is entitled to statutory or liquidated damages.

After two mediation sessions before two different mediators, Plaintiff and Visa agreed to the material terms of a class action settlement (the "Settlement"). Pursuant to the Settlement, Visa will transfer Eighteen Million Dollars ($18,000,000) into an interest bearing account after preliminary approval and the amount remaining from the settlement fund (including accrued interest) after deductions for expenses will be distributed to class members who submit claims on a non-reversionary basis. In the event that all class members do not submit claims, the amount of settlement benefits to claimants will be increased to the maximum amount of $5,000 for class members who called an Affected Phone Line from California (the maximum amount of statutory damages recoverable under California law) or $1,000 for class members who called an Affected Phone Line from a Covered State other than California (the maximum amount of statutory damages recoverable under those state laws). If any settlement funds remain thereafter, they will be donated to a mutually agreed on charity such that in no event shall Visa pay less than the full common fund amount of $18,000,000.

Plaintiff now moves under Rule 23(e) of the Federal Rules of Civil Procedure for preliminary approval of the settlement and conditional class certification for the purposes of settlement.

## **LITIGATION HISTORY**

On September 23, 2010 Plaintiff filed a class action lawsuit in state court on behalf of himself and other persons in California who had called 1-877-237-4321, a customer service telephone number for an ADP TotalPay Card account, spoke to a customer service representative and whose telephone conversation was recorded.  In his initial complaint, Plaintiff stated a single cause of action against ADP on the grounds that confidential telephone calls had been recorded without the consent of all parties in violation of Penal Code section 632 and Plaintiff sought statutory damages pursuant to Penal Code Section 637.2.  ADP subsequently removed the case to federal court on the grounds of diversity jurisdiction under CAFA. (Karasik Decl. ¶ 5).

At the outset of litigation, the parties agreed to engage in settlement discussions before engaging in formal discovery.  To enable meaningful settlement negotiations, Plaintiff requested and ADP supplied Plaintiff with substantial information.  Among other things, ADP advised Plaintiff that Visa was responsible for operating the call center service for the ADP TotalPay Card called by Plaintiff.  Thereafter, Plaintiff, Visa and ADP participated in an initial mediation session before Martin Quinn with JAMS on February 4, 2011.  At this mediation, which initially focused on Visa's alleged liability with respect to the ADP customer service number called by Plaintiff, Plaintiff learned that Visa had recorded telephone calls to numerous other customer service numbers which greatly expanded Visa's potential liability. (Karasik Decl. ¶ 6-8).

Plaintiff subsequently requested additional information regarding telephone calls to the other customer service numbers operated by Visa in the Covered States.  After Plaintiff received this information, Plaintiff, Visa and ADP participated in a second mediation session, before Jeffrey Krivis of First Mediation, on April 2, 2011.  The second mediation concluded with an agreement on the material terms of a settlement. Thereafter, the parties negotiated formal settlement documents and, in accordance with the settlement agreement, Plaintiff filed a First Amended Complaint naming Visa as the defendant in this action.  (Karasik Decl. ¶ 9-12).

## SUMMARY OF SETTLEMENT TERMS

The full terms of the settlement are set forth in the Class Action Settlement Agreement filed herewith.  The material terms are as follows:

- The Settlement Class (estimated by Plaintiff to have around 600,000 persons) is defined as: all persons (excluding Visa, its parent, subsidiaries and affiliates, and any officers and directors thereof, as well as any judge presiding over this action, the judge's spouse and immediate family) who called any Affected Phone Line [listed in Exhibit A-1 to the Settlement] prior to October 1, 2010 and spoke with a live person, and who at the time of the call resided or were located in California, Florida, Maryland, Nevada, New Hampshire or Washington.

- Visa will pay the sum of Eighteen Million Dollars ($18,000,000) which shall be placed into an interest bearing account following preliminary approval (the $18 million plus accrued interest shall be the "Gross Settlement Amount").

- After settlement administration expenses, attorney's costs and fees, and an enhancement are deducted from the Gross Settlement Amount, settlement benefits will be paid from the remaining funds (the "Net Settlement Amount") to class members who timely submit claims.

- Claimants will receive settlement benefits based on a formula that results in Class Members who called an Affected Phone Line in California receiving five times as much as persons who called an Affected Phone Line from a Covered State other than California.

- If all Class Members do not submit claims, the amount of settlement benefits per claimant will be increased up to a maximum of $5,000 for Class Members who called from an Affected Phone Line in California and $1,000 for Class Members who called from an Affected Phone Line from another Covered State.

- If any settlement funds remain after distributing the maximum amount to claimants, the remainder shall not revert to Visa but shall be donated to a mutually agreed upon charity.

1 • Visa will not oppose an application by Plaintiff for an award of attorney's fees

2 and costs up to $4.5 million (25% of the $18 million to fund the Settlement); and

3 • Visa will not oppose an application by Plaintiff for an enhancement of up to

4 Eighteen Thousand Dollars ($18,000).

5 ## THE SETTLEMENT MERITS PRELIMINARY APPROVAL

6 The law favors settlement, particularly in class actions and other complex cases

7 where substantial resources can be conserved by avoiding the time, cost, and rigors of

8 formal litigation. *Van Bronkhorst v. Safeco Corp.* (9th Cir. 1976) 529 F.2d 943, 950.

9 These concerns apply with particular force in a case such as this where an allegedly

10 illegal practice affected hundreds of thousands of consumers. Rule 23(e)(C)(1) of the

11 Federal Rules of Civil Procedures provides that a court may approve a settlement of a

12 class action only when it finds after a hearing that the settlement is "fair, reasonable, and

13 adequate," and Rule 23(e)(C)(4) provides that any class member may object to a

14 proposed settlement. Judicial review of a class action settlement thus entails a two step

15 process. "The first step is a preliminary, pre-notification hearing to determine whether

16 the proposed settlement is 'within the range of possible approval.' This hearing is not a

17 fairness hearing; its purpose, rather is to ascertain whether there is any reason to notify

18 the class members of the proposed settlement and to proceed with a fairness hearing."

19 *Armstrong v. Board of School Directors of the City of Milwaukee* (6th Cir. 1980) 616

20 F.2d 305, 314 [quoting Manual for Complex Litigation s 1.46, at 53-55 (West 1977)].

21 At the second stage of the approval process, after class members have had an

22 opportunity to object to the settlement, the court then makes a final determination

23 whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Armstrong*,

24 616 F.2d at 314.

25 In reviewing a class action settlement, a court undertakes two fundamental

26 inquiries. "First, the district court must assess whether a class exists." *Staton v. Boeing*

27 *Co.* (9th Cir. 2003) 327 F.3d 938, 952. In other words, the court must determine that the

28 lawsuit qualifies as a class action under Rule 23 to begin with. *See, e.g., Hanlon v.*

1  *Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1022 (reviewing settlement to ensure

2  compliance with requirements of Rule 23(a) and Rule 23(b)(3)).  Second, the court must

3  determine whether the settlement is "fair, adequate, and reasonable."  *Staton*, 327 F.3d

4  at 952.  As summarized by this Court, when parties reach a settlement agreement prior

5  to class certification, "courts must peruse the proposed compromise to ratify both the

6  propriety of the certification and the fairness of the settlement."  *Acosta v. Trans Union*

7  *LLC* (C.D. Cal. 2007) 243 F.R.D. 377, 383.

8        **A.**   **Plaintiff's Claims Merit Class Action Treatment**

9       Plaintiff need only make a "prima facie showing" of the requirements under Rule

10  23.  *See,* Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before

11  Trial § 10:573 (The Rutter Group 2006).  In determining the propriety of class

12  certification, a court may not delve into the underlying merits of the claims.  The

13  fundamental question "is not whether . . . plaintiffs have stated a cause of action or will

14  prevail on the merits, but rather whether the requirements of Rule 23 are met."  *Eisen v.*

15  *Carlisle & Jacquelin* (1974) 417 U.S. 156, 178.  Accordingly, the Ninth Circuit has

16  established that, when ruling on the propriety of class certification, a district court "is

17  bound to take the substantive allegations of the complaint as true."  *Blackie v. Barrack*

18  (9th Cir. 1975) 524 F.2d 891, 901 n.17.  A court "may not require plaintiffs to make a

19  preliminary proof of their claim; it requires only sufficient information to form a

20  reasonable judgment."  *Baldwin & Flynn v. Nat'l Safety Associates* (N.D. Cal. 1993)

21  149 F.R.D. 598, 600.

22       Under these governing standards, this action meets the requirements for class

23  certification under Rule 23(a) and Rule 23(b)(3).

24        **1.**   **Numerosity**

25       Under Rule 23(a)(1), a class action may be maintained where "the class is so

26  numerous that joinder of all members is impracticable."  In determining whether joinder

27  would be impracticable, a court may consider not only the sheer number of class

28  members, but also "the nature of the action, the size of the individual claims, [and] the

inconvenience of trying individual suits." *Wang v. Chinese Daily News* (C.D. Cal. 2005) 231 F.R.D. 602, 606.

Here, it is estimated that the Settlement Class is composed of no more than approximately 600,000 consumers. (Karasik Decl. ¶ 12). When a class is as large as this one, "numbers alone are dispositive." *Riordan v. Smith Barney* (N.D. Ill. 1986) 113 F.R.D. 60, 62. It makes no difference that Plaintiff cannot provide the precise number of class numbers. "A class action may proceed upon estimates as to the size of the proposed class." *Lewis v. Gross* (E.D. N.Y. 1986) 663 F.Supp. 1164, 1169. *See also, In re Computer Memories Sec. Litig.* (N.D. Cal. 1986) 111 F.R.D. 675, 679 (class certified where plaintiffs did not establish exact number of class members, but demonstrated that class would "obviously be sufficiently numerous").

Although  Rule 23 does not expressly require an "ascertainable class," some courts have found this to be an implicit requirement for class certification under Rule 23.  Whether or not required for certification of a settlement class under Rule 23, an ascertainable class exists in this case because the Settlement Class is defined in terms of objective characteristics that makes class membership verifiable by class members themselves.  In a consumer class action like this one, self identification by class members is all that is required for an ascertainable class. *See*, *e.g.*, *In re Tableware Antitrust Litigation* (N.D. Cal. 2007) 241 F.R.D. 644, 651 (ascertainable class where consumers could determine by reading class definition whether or not they were included in the class); *In re Static Random Access Memory Antitrust Litigation* (N.D. Cal. 2009) 264 F.R.D. 603, 608 (class ascertainable where class members can identify themselves).  Here, both the Long Form Notice to be mailed to potential class members and the Summary Notice to be published provide a full list of all the Affected Phone Lines in this case.  Consumers who read either the Summary Notice or the Long Form Notice can determine whether or not they called one of the Affected Phone Lines from one of the Covered States prior to October 1, 2010 and spoke to a customer service representative and thus identify themselves as members of the Settlement Class.

## 2. **Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This commonality requirement must be "construed permissively." *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1019. Plaintiff need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.* Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie*, 524 F.2d at 902.

Here, class members share a common factual question – did Visa record a telephone conversation they had with a customer service representative without disclosing that the call would be recorded – and a common legal question -- did Visa violate any of the laws of the Covered States that make it unlawful to record a telephone conversation without the consent of all parties to the conversation.[1] Any factual variations among class members, such as which Affected Phone Line they called, the precise date or time of day they called, or how many times they called, have no bearing on these common questions. All members of the Settlement Class share the common interest of determining whether they are entitled to statutory or liquidated damages for the unlawful recording of a telephone conversation without their consent.[2]

---

[1] The following laws of the Covered States have substantially similar prohibitions against the recording of telephone conversations without the consent of all parties to the conversation: Cal. Penal Code § 632; Fla. Stat. Ch. 934.03; Md. Code Ann., Cts. & Jud. Proc., § 10-402;Nev. Rev. Stat Ann. § 200.620; N.H. Rev. Stat. Ann. § 570-A:2-I; Wash. Rev. Code § 9.73.030(1).

[2] The following laws of the Covered States have substantially similar provisions allowing recovery of statutory or liquidated damages for the unlawful recording of telephone conversations: Cal. Penal Code § 637.2; Fla. Stat. Ch. 934.10; Md. Code Ann., Cts. & Jud. Proc. § 10-410; Nev. Rev. Stat. Ann. § 200.690; N.H. Rev. Stat. Ann. § 570:A:11; Wash. Rev. Code § 9.73.060.

### 3.    **Typicality**

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class."  Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." *Hanlon*, 150 F.3d at 120.  In other words, named plaintiffs need not be "identically situated" with all other class members.  "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.* (9th Cir. 1990) 917 F.2d 1171, 1175.

Typicality refers to the "nature of the claim . . . of the class representative, and not to the specific facts from which it arose." *Hanon v. Dataproducts Corp.* (9th Cir. 1992) 976 F.2d 497, 508.  The test of typicality is thus "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.*

Here, Plaintiff is a members of the Settlement Class and alleges the same injuries allegedly suffered by other class members -- violation of their privacy rights by having a telephone conversation recorded without their consent.  All class members also seek the same relief.  Class members seek statutory or liquidated damages.  This lawsuit is based on conduct that is not unique to Plaintiff but is common to all class members. *See, e.g., Murray v. GMAC Mortgage Corp.* (N.D. Ill. 2007) 2007 WL 1100608, *5 (typicality established where, despite minor factual discrepancies, all putative class members had "the same essential characteristics"); *see also, In re Activision* (N.D. Cal. 1985) 621 F.Supp. 415, 428 (finding that "the only material variation among class members is the amount of damages to which each member is entitled" and that "[s]uch differences are insufficient to defeat class certification").

### 4.   **Adequate Representation**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Adequate representation turns on whether the named plaintiffs and their counsel "have any conflicts of interest with other class members," and whether the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

Here, there are no conflicts of interest between Plaintiff and class members. Given the similarity of the claims asserted and remedies sought by class members in this case, it is hard to imagine how there could be any conflicts.  To Plaintiff's knowledge, Visa has no basis for asserting against Plaintiff any unique defenses that Visa could not assert against any other class member.  Nor does Visa have any basis for suggesting that Plaintiff lacks sufficient zeal or competence.

Nor are their any conflicts with Plaintiff's counsel.  Visa cannot dispute that Plaintiff's counsel, who have substantial class action experience, can adequately represent the class.  *See, Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.* (9th Cir. 2001) 244 F.3d 1152, 1162 (adequacy established by mere fact that counsel were experienced practitioners).

### 5.   **Predominance of Common Questions**

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162.  Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.* (9th Cir. 2001) 253 F.3d 1188, 1189.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.  It is well settled that the need for determining differing amounts of damages suffered by different class members does not preclude class certification.  *See, Blackie*, 524 F.2d at 905; *Wang v. Chinese Daily News*

(C.D. Cal. 2005) 231 F.R.D. 602, 613.

The predominance requirement is satisfied in this case because the critical inquiry upon which Visa's liability hinges is whether Visa, by failing to disclose to consumers that their telephone calls with customer service representatives would be recorded, recorded their telephone conversations without their consent. Because lack of consent can be inferred on a class wide basis merely from the lack of disclosure, no individual inquiry is required about any particular call to any of the Affected Phone Lines. For example, under California law, which prohibits the recording of a "confidential" telephone conversation, whether a telephone conversation is "confidential" entails an objective inquiry. *See, Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 768; *Deteresa v. American Broadcasting Companies, Inc.* (9th Cir. 1997) 121 F.3d 460, 463. Under California law, confidentiality "requires nothing more than the existence of a reasonable expectation by one of the parties that no one is 'listening in' or overhearing the conversation." *Frio v. Superior Court* (1988) 203 Cal.App.3d 1480, 1490. A jury can easily decide, for all class members in one lawsuit, whether it was reasonable for any person who called one of the Affected Phone Lines and was not apprised that the call would be recorded to expect that the call would not be recorded.

Whether consumers who called an Affected Phone Line had an objectively reasonable expectation that their calls would not be recorded, and thereby did not consent to recording of their conversations, is clearly the central issue in this case that predominates over any individual issues. Considerations of judicial economy obviously favor litigating this common issue once in a class action instead of thousands of times in separate lawsuits. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

### 6. Superiority

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied,

1    a court must compare a class action with alternative method s for adjudicating the

2    parties' claims.  Lack of a viable alternative to a class action necessarily means that a

3    class action satisfies the superiority requirement.  "[I]f a comparable evaluation of other

4    procedures reveals no other realistic possibilities, [the] superiority portion of Rule

5    23(b)(3) has been satisfied." *Local Joint Executive Bd. of Culinary/Bartenders Trust*

6    *Fund v. Las Vegas Sands, Inc.* (9th Cir. 2001) 244 F.3d 1152, 1163. *See also*, *Valentino*

7    *v. Carter-Wallace* (9th Cir. 1996) 97 F.3d 1227, 1235-36 ("a class action is a superior

8    method for managing litigation if no realistic alternative exists").  Here, since Visa

9    allegedly violated the laws of the Covered States on hundreds of thousands of

10   occasions, there are clearly no economical alternatives to a class action.

11        Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion.

12   Ordinarily, these factors are (A) the interest of members of the class in individually

13   controlling the prosecution or defense of separate actions; (B) the extent and nature of

14   any litigation concerning the controversy already commenced by or against members of

15   the class; (C) the desirability or undesirability of concentrating the litigation of the

16   claims in the particular forum; and (D) the difficulties likely to be encountered in the

17   management of a class action.  However, when a court reviews a class action settlement,

18   the fourth factor does not apply.  In deciding whether to certify a class for settlement

19   purposes, a district court "need not inquire whether the case, if tried, would present

20   intractable management problems." *Amchem Products Inc. v. Woodward* (1997) 521

21   U.S. 591, 620.  Here, the remaining factors set forth in Rule 23(b)(3)(A), (B) and (C) all

22   favor class certification.

23        First, class members have no particular interest in individually controlling the

24   prosecution of separate actions.  Any class member who wants to pursue a claim for an

25   amount greater than a settlement share can opt out of the Settlement.

26        Second, there is no competing litigation regarding the statutory violations at

27   issue.

28

---

MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   Finally, it is desirable to concentrate the issues in this forum because the parties

2   reside in California and many Class Members reside in California.   Instructively, Visa

3   did not move to transfer venue for these cases to another district.   Moreover, the parties

4   have reached a Settlement.   "With the settlement in hand, the desirability of

5   concentrating the litigation in one forum is obvious."   *Elkins v. Equitable Life Ins. Of*

6   *Iowa* (M.D. Fla. 1998) 1998 WL 133747, at *19.   *See also*, *Strube v. American Equity*

7   *Inv. Life Ins. Co.* (M.D. Fla. 2005) 226 F.R.D. 688, 697 (third and fourth  Rule 23(b)(3)

8   factors are "conceptually irrelevant in the context of a settlement").   The conclusion is

9   inescapable that a  class action provides the most efficient mechanism for resolving all

10   the claims of the class members in this case.

**B.**    **The Settlement is Fair, Reasonable and Adequate**

12   No single criterion determines whether a class action settlement meets the

13   requirements of Rule 23(e).   The Ninth Circuit has directed district courts to consider a

14   variety of factors without providing an "exhaustive list" or suggesting which factors are

15   most important.   *See*, *Staton,* 327 F.3d at 959.   "The relative degree of importance to be

16   attached to any particular factor will depend upon and be dictated by the nature of the

17   claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances

18   presented by each individual case."   *Officers for Justice v. Civil Service Commission of*

19   *City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615, 625.

20   Due to the impossibility of predicting any litigation result with certainty, a district

21   court's evaluation of a settlement essentially amounts to "nothing more than 'an

22   amalgam of delicate balancing, gross approximations and rough justice.'"   *Officers for*

23   *Justice,* 688 F.2d at 625 [citation omitted].   The ultimate touchstone, however, is

24   whether "class counsel adequately pursued the interests of the class as a whole."   *Staton,*

25   327 F.3d at 961.   As the Ninth Circuit explained in *Officers for Justice*, the district

26   court's role in evaluating a class action settlement is therefore tailored to meet that

27   narrow objective.   Review under Rule 23(e) "must be limited to the extent necessary to

28   reach a reasoned judgment that the agreement is not the product of fraud or

1  overreaching by, or collusion between, the negotiating parties." Accordingly, the Ninth

2  Circuit will not reverse district court approval of a class action settlement "unless the

3  fees and relief provisions clearly suggest the possibility that class interests gave way to

4  self interest." *Staton*, 327 F.3d at 961.

5      Here, the parties reached a non-collusive settlement after sufficient investigation

6  and informal discovery enabled counsel to form educated opinions about the value of

7  the case. Since obtaining class certification and establishing liability posed difficult

8  hurdles for Plaintiff that justified compromise of his claims, the Settlement falls well

9  within the range of reasonable outcomes and merits approval under Rule 23(e).

10          **1.    Gross Settlement Amount**

11      The parties reached a Settlement in good faith after negotiating at arms length

12  during two full day mediation sessions, first before Martin Quinn and then before

13  Jeffrey Krivis, both of whom are experienced and well regarded mediators. Although

14  the parties agreed to mediate before completing all possible discovery, approval of a

15  class action settlement does not require that discovery be exhaustive. *See, e.g.*, *In re*

16  *Immune Response Securities Litigation* (S.D. Cal. 2007) 497 F.Supp.2d 1166, 1174

17  (settlement approved where informal discovery gave the parties a clear view of the

18  strength and weaknesses of their cases). The fact that settlement results from arms

19  length negotiations following "relevant discovery" creates "a presumption that the

20  agreement is fair." *Linney v. Cellular Alaska Partnership* (N.D. Cal. 1997) 1997 WL

21  450064, at *5.

22      Here, based on the data supplied by ADP and Visa regarding the extent to which

23  calls were made to Affected Phone Lines, callers spoke with a customer service

24  representative, calls with customer service representatives were recorded, and

25  recordings of calls actually exist, the Gross Settlement Amount ($18 million plus

26  interest) achieved by Plaintiff represents a substantial recovery for class members that

27  falls well within the range of reasonable litigation outcomes. This conclusion applies to

28  each component of the Settlement Class and the Settlement as a whole.

Calls to the ADP Customer Service Number

Plaintiff attributes $9 million from the Gross Settlement Amount to calls made to the ADP customer service number called by Plaintiff. Based on the information supplied by ADP, Plaintiff estimated at mediation that approximately 18,000 calls to that number were unlawfully recorded. The portion of the Settlement attributable to these calls thus represents a value of $500 per recorded call. In the opinion of Plaintiff's counsel, this reflects an exceptionally good result. (Karasik Decl. ¶ 14-18).

Under Penal Code Section 637.2, violation of Penal Code Section 632 exposes the defendant to liability for statutory damages in the amount of $5,000 per unlawfully recorded call. For several reasons, however, it was not realistic for Plaintiff to expect recovery of the maximum amount of statutory damages under Section 637.2.

First, ADP (or Visa) had a strong argument that the amount of statutory damages under Section 637.2 was constitutionally excessive in light of the fact that none of the unlawfully recorded phone calls resulted in any actual damages or economic harm. Courts have rejected constitutional challenges to statutes providing for statutory damages of $1,000 or less in the absence of economic harm. *See*, *e.g.*, *Mourning v. Family Publications Service, Inc.* (1973) 411 U.S. 356 (statutory damages of $100 to $1,000 under Truth in Lending Act); *Texas v. American Blastfax, Inc.* (W.D. Tex. 2000) 121 F.Supp.2d 1085, 1090 ($500 penalty under Telephone Consumer Protection Act). Penal Code Section 637.2, however, provides for a much higher amount of statutory damages. Moreover, the amount of statutory damages under Section 637.2 far exceeds the amount of statutory damages recoverable under the comparable laws of the Covered States. Plaintiff faced a serious risk that no court would ever award the full amount of statutory damages theoretically available under Section 637.2.

Second, ADP (or Visa) had a strong argument that a one year statute of limitations applies to claims for violation of Section 632. *See*, *Ion Equipment Corp. v. Nelson* (1980) 110 Cal.App.3d 868. Although Plaintiff maintains that language in *Ion* supporting a one year limitations period is non-binding *dicta* and a three year limitations

1  period governs, Plaintiff faced a significant risk that a court would find a one year

2  limitations period applicable and Plaintiff's claims based on calls to the ADP customer

3  service number (or other Affected Phone Lines in California) would therefore have been

4  substantially reduced.  Based on the data supplied by ADP, Plaintiff estimated that there

5  were approximately 6,000 unlawfully recorded calls to the ADP customer service

6  number called by Plaintiff within a one year limitations period.

7       In addition to the above, Plaintiff faced substantial risks that class certification

8  would not have been granted.  Plaintiff believes that he would have prevailed on class

9  certification and the fact that class certification has been granted in other cases based on

10  a failure to disclose that telephone calls were being recorded supports Plaintiff's

11  position about the propriety of class certification.  *See, e.g.*, *Thomasson v. GC Services,*

12  *Ltd. Partnership* (S.D. Cal. 2011) 2011 WL 1339063.  Nevertheless, courts have

13  discretion when it comes to determining whether or not to certify a class and ADP (or

14  Visa) would have vigorously contested a  motion for class certification.

15       In sum, this case presented Plaintiff with substantial litigation risks.  The value of

16  $500 per recorded call achieved by Plaintiff with respect to the ADP customer service

17  number reflects an incredibly good result.  (Karasik Decl. ¶ 18).

18  Calls to Other Customer Service Numbers in California

19       Plaintiff attributes $3 million from the Gross Settlement Amount to calls made to

20  Affected Phone Lines in California other than the ADP customer service number called

21  by Plaintiff.  Based on the information from Visa, Plaintiff estimates that approximately

22  30,000 calls to those numbers were unlawfully recorded.  The portion of the Settlement

23  attributable to these calls thus represents a value of $100 per recorded call.  In the

24  opinion of Plaintiff's counsel, this too was a very good result.  (Karasik Decl. ¶ 19-21).

25       In addition to all the litigation risks discussed above, Plaintiff faced a separate

26  hurdle that would have made it more difficult to prevail on claims based on the

27  recording of calls to Affected Phone Lines other than the ADP customer number called

28  by Plaintiff.  Whereas Visa had retained recordings of a significant number calls made

1 | to the ADP customer service number called by Plaintiff, according to Visa it had only
2 | had a limited number of recordings of calls to the other Affected Phone Lines. While
3 | Visa had actual or estimated data regarding the number of calls made to Affected Phone
4 | Lines, the percentage of such calls involving a conversation with a customer service
5 | representative, and the percentage of those calls recorded, the absence of actual
6 | recordings of calls presented Plaintiff with potential proof problems that would have
7 | made it more difficult to obtain a judgment in favor of class members.

8 | This potential proof problem warranted a lower settlement value for claims based
9 | on calls to Affected Phone Lines in California. In the opinion of Plaintiff's counsel,
10 | however, the amount of $100 per recorded call still represents a very good settlement
11 | value for these claims in light of the fact that none of the unlawfully recorded calls
12 | involved any actual economic harm or injury. (Karasik Decl. ¶ 21).

13 | Calls to Customer Service Numbers in States Other than California

14 | Plaintiff attributes $6 million from the Gross Settlement Amount to calls made to
15 | Affected Phone Lines in Covered States other than California. Based on the
16 | information from by Visa, Plaintiff estimates that approximately 600,000 calls to those
17 | numbers were unlawfully recorded. The portion of the Settlement attributable to these
18 | calls thus represents a value of $10 per recorded call. In the opinion of Plaintiff's
19 | counsel, this was a good result because, apart from all the litigation risks and proof
20 | problems discussed above, the laws of the Covered States other than California provide
21 | for a much lower amount of statutory or liquidated damages. The laws of Florida,
22 | Maryland, Nevada and New Hampshire allow for recovery of the greater of $100 a
23 | violation or $1,000 while Washington law allows for recovery of $100 for each day of
24 | violation not to exceed $1,000. (Karasik Decl. ¶ 22-25).

25 | In light of the lower amounts of statutory or liquidated damages recoverable
26 | under these laws, Plaintiff achieved a good value per recorded call with respect to the
27 | Affected Phone Lines in states other than California. Indeed, the value per call achieved
28 | by Plaintiff is much higher than other plaintiffs have achieved in comparable cases.

1    Prior to the second mediation, Plaintiff obtained the following information about

2    settlements in other cases involving the unlawful recording of telephone calls:

3    a)    *Batmanghelich v. Sirius XM Radio, Inc.*, United States District Court,

4          Central District of California, Case No. 09-9190 -- 3.5 million potential

5          class member settled for $9.48 million (approximately $2.70 per call); and

6    b)    *Greenberg v. E-Trade Financial Corporation*, Los Angeles County

7          Superior Court Case No. BC 360152 -- 1.4 potential class members settled

8          for $7.50 million (approximately $5.36 per call).

9    The value of $10 per recorded call achieved by Plaintiff with respect to calls to

10   Affected Phone Lines in states other than California is much higher than the value per

11   call achieved by the plaintiff in the *Sirius* or the *E-Trade* case.  This component of the

12   Settlement reflects a very good result.  (Karasik Decl. ¶ 25).

13   <u>Summary</u>

14   In sum, with respect to all three components of the settlement class, Plaintiff

15   obtained excellent value for his claims in the face of substantial litigation risks that,

16   absent a settlement, may have resulted in class members getting absolutely nothing.

17   Plaintiff clearly achieved a fair settlement well within the range of reasonable outcomes

18   that merits approval.  *See*, *In re Cendant Corp., Derivative Action Litigation* (D. N.J.

19   2002) 232 F.Supp.2d 327 (approving settlement which provided 2% value compared to

20   maximum possible recovery).

21   **2.    Formula for Allocation of Settlement Benefits**

22   The formula for allocating settlement benefits provides that Class Members who

23   called from an Affected Phone Line in California will receive five times as much as

24   Class Members who called an Affected Phone Line from a Covered State other than

25   California.  This formula is reasonable because it corresponds to the fact that the

26   maximum amount recoverable under California law ($5,000) is five times as much as

27   the maximum amount recoverable under the laws of the other Covered States ($1,000).

28

1    The Settlement further provides that, in the event not all Class Members submit

2    claims, the amount of settlement benefits per claimant will be increased up to the

3    maximum amount recoverable under the state law applicable to the claimant.  In light of

4    this provision and the historical fact that claim rates in consumer cases are typically low,

5    the settlement will most likely result in claimants receiving an extremely high value (if

6    not 100%) for their claims.  (Karasik Decl. ¶ 26).  A settlement that ultimately provides

7    full or close to full value for claims is unquestionably fair and reasonable.

8                              **3.    Attorney's Fees and Costs**

9    The compensation sought for Plaintiff's counsel is also fair and reasonable.  The

10   Ninth Circuit has directed that, to determine what constitutes a fair and reasonable

11   percentage of the settlement for purposes of calculating common fund attorneys' fees,

12   the courts should use a "benchmark" percentage of 25% of the total fund.  *Paul,*

13   *Johnson, Alston & Hunt v. Graulty* (9th Cir. 1989) 886 F.2d 268, 272; *Vizcaino v.*

14   *Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047; *Six Mexican Workers v. Arizona*

15   *Citrus Growers* (9th Cir. 1990) 904 F.2d 1301, 1311.  Here, the Gross Settlement

16   Amount obtained through the efforts of Plaintiff's counsel is $18,000,000 (plus interest).

17   Adhering to the benchmark established by the Ninth Circuit, Plaintiff's counsel intends

18   to seek no more than $4.5 million in fees and costs combined (25% of the Gross

19   Settlement Amount before interest). (Karasik Decl. ¶ 29).

20   An attorney's fee award based on a lodestar calculation would not be appropriate

21   in this case because Plaintiff achieved an extremely good settlement at an early stage of

22   litigation.  The Ninth Circuit has recognized that the lodestar method "creates incentives

23   for counsel to spend more hours than may be necessary on litigating a case so as to

24   recover a reasonable fee, since the lodestar method does not reward early settlement."

25   *Vizcaino v. Microsoft Corp.*  (9th Cir. 2002) 290 F.3d 1043, 1050, n.5.  The Ninth

26   Circuit has thus cautioned that, while a lodestar method <u>can</u> be used as a cross check on

27   the reasonableness of fees based on a percentage of recovery method if a district court

28   in its discretion chooses to do so, <u>a lodestar calculation is not required</u> and it did "not

---

1  mean to imply that class counsel should necessarily receive a lesser fee for settling a
2  case quickly." *Id.*

3      In accordance with Ninth Circuit precedents, district courts within the Ninth
4  Circuit have often recognized that a lodestar cross check need not be performed where
5  plaintiff's counsel achieves a significant result through an early settlement. *See, e.g.,*
6  *Lewis v. Starbucks Corp.* (E.D. Cal. 2008) 2008 WL 4196690 (appropriate to calculate
7  attorney's fees on basis of common fund theory and not lodestar where settlement
8  achieved at relatively early stage of litigation); *Glass v. UBS Financial Services, Inc.*
9  (N.D. Cal. 2007) 2007 WL 221862 (court declined to conduct a lodestar cross check,
10  and approved a request for fees based only on the percentage of recovery method,
11  because it recognized that premising attorney's fees on a lodestar calculation would
12  have unfairly penalized plaintiff's counsel for settling the case without protracted
13  litigation); *In re Mfrs. Life Ins.* (S.D. Cal. 1998) 1998 WL 1993385 (court concluded
14  that lodestar analysis was unnecessary and attorney's fee was reasonable solely on
15  percentage-recovery method).

16      In this case, a lodestar calculation would penalize Plaintiff's counsel for achieving
17  a stellar result with maximum efficiency and thus conflict with the "strong judicial
18  policy that favors settlements, particularly where complex class action litigation is
19  concerned." *In re Syncor ERISA Litigation* (9th Cir. 2008) 516 F.3d 1095, 1101.
20  Moreover, a lodestar calculation under these circumstances would undermine the
21  equitable considerations that dictate the percentage of recovery method for calculating
22  attorney's fees in common fund cases. The percentage of recovery method "rests on the
23  presumption that persons who obtain benefits of a lawsuit without contributing to its
24  cost are unjustly enriched at the successful litigant's expense." *Staton v. Boeing* (9th
25  Cir. 2003) 327 F.3d 938, 967. This rule, known as the "common fund doctrine," is
26  designed to prevent unjust enrichment by distributing the costs of litigation among those
27  who benefit from the efforts of others. *Paul, Johnson, Alston & Hunt v. Graulty* (9th
28  Cir. 1989) 886 F.2d 268, 271.

1   It is only fair that every class member who benefits from the opportunity to claim

2   a share of the settlement pay his or her pro rata share of attorney's fees, and Plaintiff's

3   request for fees at the benchmark rate of 25% means that Plaintiff seeks an amount of

4   fees less than the amount Plaintiffs' counsel would be entitled to receive if they

5   represented each class member individually.  The regular contingent fee contract of

6   Plaintiff's counsel provides for attorney's fees between 35% and 40% of any recovery

7   obtained for the client (Karasik Decl. ¶ 29).  It would be unfair to compensate Plaintiff's

8   counsel at a lesser rate because they obtained relief for hundreds of thousands of class

9   members.  To the contrary, equitable considerations dictate that Plaintiff's counsel be

10  rewarded for achieving a settlement that confers benefits among so many people,

11  especially without protracted litigation.  The excellent result achieved by Plaintiff's

12  counsel merits an award of attorney's fees equal to 25% of the common fund in this case

13  without any lodestar consideration or cross check.

14              **4.    <u>Incentive Payment</u>**

15  Incentive payments serve to reward named plaintiffs for the time and effort

16  expended on behalf of the class, and for exposing themselves to the significant risks of

17  litigation. "Courts routinely approve incentive awards to compensate named plaintiffs

18  for the services they provided and the risks they incurred during the course of the class

19  action litigation." *Ingram v. The Coca-Cola Co.* (N.D. Ga. 2001) 200 F.R.D. 685, 694;

20  *In re Southern Ohio Correctional Facility* (S.D. Ohio 1997) 175 F.R.D. 270, 272.  In

21  *Coca-Cola*, for example, the court approved incentive awards of $300,000 to each

22  named plaintiff in recognition of the services they provided to the class by responding

23  to discovery, participating in the mediation process and taking the risk of stepping

24  forward on behalf of the class.  *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v.*

25  *Atl. Richfield Co.* (N.D. Cal. 1995)  901 F. Supp. 294, 300 (approving $50,000

26  participation award).

27  Here, Plaintiff seeks an incentive award that may not exceed $18,000.  This

28  amount is comparable to the amount of incentive payments awarded to named plaintiffs

1  in other class action cases.  (Karasik Decl.  ¶ 28, Ex. 2).  Moreover, compared to the

2  Gross Settlement Amount, the amount of the incentive payment sought by Plaintiff is

3  relatively small and will not appreciably diminish the amount of settlement funds

4  available for distribution to absent class members.  Also, Plaintiff participated in not

5  just one but two separate mediation sessions.  Especially in light of the exceptional

6  result achieved by Plaintiff, his dedication to ensuring a fair and reasonable settlement

7  merits significant reward.

8  **5.    The Class Notice**

9        Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the

10  court must direct to class members the "best notice practicable" under the

11  circumstances.  Rule 23(c)(2)(B) does not require "actual notice" or that a notice be

12  "actually received."  *Silber v. Mabon* (9th Cir. 1994) 18 F.3d 1449, 1454.  Notice need

13  only be given in a manner "reasonably calculated, under all the circumstances, to

14  apprise interested parties of the pendency of the action and afford them an opportunity

15  to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339

16  U.S. 306, 314.

17        Here, the parties have agreed to a Notice Plan with several components.  First, a

18  Long Form Notice will be mailed to approximately 500,000 potential class members

19  whose name and address are known to VISA (persons with a registered debit card

20  account).  Second, a Summary Notice will be published in a variety of publications in

21  the Covered States, including *Parade* magazine, *USA Today*, and *People* magazine.

22  Third, notice of the settlement, including links to a dedicated settlement website on the

23  internet, will be given through online advertising on AOL, Yahoo, 24/7 Network,

24  Univision.com, MSN Hotmail, Facebook and the Top Class Actions website.  The

25  comprehensive Notice Plan, designed to reach at least 73% of all potential class

26  members (Finegan Decl. ¶ 13) clearly satisfies the requirements of Rule 23(c) and due

27  process.  *See*, *Mirfasihi v. Fleet Mortgage Corp.* (7th Cir. 2004) 356 F.3d 781, 786

28  (notice by publication and website adequate where individual notice impossible); *see*

**MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

21

*also*, *Battle v. Liberty National Life Ins. Co.* (M.D. Ala. 1991 ) 770 F.Supp. 1499, 1515, n. 47 (individual notice not required where absent members are not identified and cannot be located through diligent efforts) *aff'd*, (11th Cir. 1992) 874 F.2d 1279.

Rule 23(c)(2)(B) also sets forth requirements regarding the content of the notice. The notice must concisely and clearly state in plain, easily understood language:

- the nature of the action;
- the definition of the class certified;
- the class claims, issues, or defenses;
- that class member may enter an appearance through counsel if the member so desires;
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

The proposed Long Form Notice and Summary Notice comply fully with Rule 23(c)(2)(B). Courts routinely approve class notices even when they provide only general information about a settlement. *See, e.g., Mendoza v. United States* (9th Cir. 1980) 623 F.2d 1338, 1351 ("very general description of the proposed settlement" sufficient); *In re Michael Milken & Assocs. Sec. Litig.*, (S.D. N.Y. 1993) 150 F.R.D. 57, 60 (notice "need only describe the terms of the settlement generally.") The class notices in this case provides more than adequate notice about the Settlement.

The Settlement also provides that Plaintiff's motion for attorney's fees will be made available to Class Members prior to final approval. Under Rule 23(h), class members must be given notice of the plaintiff's fee application separate and apart from the general notice given to the class after preliminary approval. *See, In Re Mercury Interactive Securities Litigation* (9th Cir. 2010) 618 F.3d 988. To comply with this requirement, the Settlement provides that the motion for attorney's fees filed by Plaintiff will posted on the settlement website at least 35 days before the final approval hearing and Class Members will have until 21 days before the final approval hearing to file

1   objections to the motion.  The Long Form Notice and Summary Notice explains the

2   objection process and further advise that a copy of the motion for attorney's fees filed by

3   Plaintiff can also be obtained from settlement website.  This notice procedure satisfies

4   the due process requirements of Rule 23(h) established by the Ninth Circuit in *Mercury*

5   *Interactive*.

6   **THE COURT SHOULD SCHEDULE A FAIRNESS HEARING**

7   The last step in the settlement approval process is the fairness hearing, where the

8   court makes a final determination about the propriety of settlement.  In accordance with

9   the timetables set forth in the Settlement for giving notice to Class Members and

10   submitting claims or requests for exclusion, Plaintiff requests that the fairness hearing in

11   this case be scheduled on or after November 14, 2011 (at least 126 days after

12   preliminary approval).

13   **CONCLUSION**

14   Plaintiff obtained a Settlement that provides hundreds of thousands of consumers

15   extremely good value on claims that would be extremely difficult and risky to litigate.

16   Since the Settlement is fair, reasonable and adequate in all respects, the Court should

17   grant Plaintiff's motion for preliminary approval of the Settlement in its entirety and

18   adopt the proposed order submitted herewith.

19

20   Dated: June 3, 2011          SPIRO MOSS LLP

21

22                    By:    /s/ Gregory N. Karasik

23                           Gregory N. Karasik
                             Attorneys for Plaintiff
24                           FRANCISO MARENCO

25

26

27

28