## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO MARENCO,<br>individually and on behalf of others<br>similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>VISA INC. , a Delaware corporation,<br><br>        Defendant. | Case No. CV10-8022 DMG (VBK)<br><br>DECLARATION OF<br>JEANNE C. FINEGAN, APR |

I, JEANNE C. FINEGAN, declare as follows:

### INTRODUCTION

1.      GCG, Inc. ("GCG") has been retained by the parties in the above-captioned case to develop a proposed legal notification program (the "Notice Program") to advise putative members of the Settlement Class (as described below) of a proposed settlement that will resolve all claims asserted pertaining to this case, and of their rights with respect to their membership in the Settlement Class.  As defined in the proposed Settlement Agreement, dated May 31, 2011 at ¶ 2.25, the Settlement Class is defined as follows:

> "All Persons who … called any Affected Phone Line prior to October 1, 2010 and
> spoke with a live person, and who at the time of the call resided or were located in
> California, Florida, Maryland, Nevada, New Hampshire, or Washington."

2.      This Declaration describes and details the proposed Notice Program, and it will address why this proposed Notice Program is the most appropriate notice under the

circumstances of this class action, is reasonably calculated to reach targeted potential Class Members, and is consistent with other similar court-approved notice programs.

## QUALIFICATIONS

3.    GCG has specialized in the design and implementation of notification campaigns for class action and bankruptcy proceedings for over twenty-five years. GCG's team has administered more than 1,200 separate cases; mailed over 227 million notices; processed over 40 million claims; distributed over $22 billion in compensation; handled over 3 million calls; and designed and launched hundreds of case websites.  In addition, GCG's legal notices have appeared in more than 40 languages in approximately 170 countries.

4.    I am a Senior Vice President of GCG and of GCG Communications, a division of GCG. A comprehensive description of my credentials and experience that qualify me to provide expert opinions on the adequacy of class action notice programs is attached as Exhibit A. I have served as an expert, directly responsible for the design and implementation of hundreds class action notice programs, some of which are the largest and most complex programs ever filed in both the United States and in Canada.

5.    I have more than 20 years of communications and advertising experience and I am the only Notice Expert accredited in Public Relations (APR) by the Universal Accreditation Board, a program administered by the Public Relations Society of America. Further, I have provided testimony before Congress on issues of notice.  Also, I have lectured, published and been cited extensively on various aspects of legal noticing, product recall and crisis communications and have served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the Commission can increase the effectiveness of its product recall campaigns.

6.    This Declaration, as it relates to the efficacy of the proposed Notice Program described herein, is based upon my personal knowledge, as well as on

information provided to me by the parties, and by my associates and staff, including information reasonably relied upon in the fields of advertising, media and communications.

7.     I have designed, implemented or consulted on many of the largest and highest profile national and international legal notice communication programs for a wide range of class actions and regulatory and consumer matters that include product liability, construction defect, antitrust, asbestos, medical pharmaceutical, human rights, civil rights, telecommunications, media, environmental, securities, banking, insurance and bankruptcy.   Those cases include, but are not limited to: *In Re Nortel I & II Securities Litigation,* Civil Action No. 01-CV-1855 (RMB), Master File No. 05 MD 1659 (LAP) (S.D.N.Y. 2006), *SEC v. Vivendi Universal, S.A., et al.,* Case No. 03-CV-10195-PKC (S.D.N.Y. 2003); *In re: Canadian Air Cargo Shipping Class Actions* (Ontario Superior Court of Justice, Court File No. 50389CP, Supreme Court of British Columbia, Quebec Superior Court); *DeHoyos v. Allstate Insurance Company*, Civil Action No SA-01-CA-1010-FB (W.D. Tex. 2006); *In re: John's Manville (Statutory Direct Action Settlement, Common Law Direct Action and Hawaii Settlement*), Index No 82-11656 (BRL) (Bankr. S.D.N.Y. 2004); *Deke, et al. v. Cardservice International*, Case No. BC 271679 (Los Angeles County Sup. Ct., Cal. 2004); *Sager v. Inamed Corp. and McGhan (Medical Breast Implant Litigation)*, Case No. 01043771 (Santa Barbara County Sup. Ct., Cal. 2004); *Wilson v. Massachusetts Mutual Life Insurance Company*, No. D-101-CV 98-02814 (1st Jud. Dist. Ct., Santa Fe County, N.M.); *In re: Florida Microsoft Antitrust Litigation*, Index No. 99-27340 (11th Jud. Dist. Ct. of Miami, Dade County, Fla.); *In re: Montana Microsoft Antitrust Litigation,* No. DCV 2000 219 (1st Jud. Dist. Ct., Lewis & Clark County, Mont.); *In re: MCI Non-Subscriber Ratepayers*, MDL No. 1275 (S.D. Ill.); *Sparks v. AT&T Corporation*, No. 96-LM-983 (3d Jud. Cir., Madison County, Ill.); *Pigford v. Glickman*, No. CA 97-19788 (PLF) (D.D.C.); *In re: SmithKline Beecham Clinical Billing*, No. CV 97-L-1230 (3d Jud. Dist., Madison County, Ill.); *Schmidt v.*

*Adidas Salomon A.G.*, No. OCN-L-1248-01 (N.J. Super. Ct.); *MacGregor v. Schering Plough Corp.*, No. EC248041 (Los Angeles County Sup. Ct., Cal.); *In re: Louisiana-Pacific Inner Seal Siding*, Nos. 879-JE and 1543JE (D. Or.); *Foster v. ABTco Siding Litigation*, No. 95-151-M (Cir. Ct. of Choctaw County, Ala.); *In re: Johns-Manville Phenolic Foam*, No. CV 96-10069 (D. Mass.); *In re: James Hardie Roofing*, No. CV 00-2-17945-65SEA (King County Super. Ct., Wash.); *Claybrook v. Sunbeam Corporation*, No. CV-98-C-1546-W (UWC) (N.D. Ala.); *In re: American Cyanamid*, No. CV-97-0581-BH-M (S.D. Ala.); *Bristow v. Fleetwood Enterprises*, No. Civ 00-0082-S-ELJ (D. Idaho); *Spencer v. Shell Oil Co.*, No. CV 94-074 (Harris County Dist. Ct., Tex.); and *In re: StarLink Corn Products*, No. 01 C 1181 (N.D. Ill.).

8.    In evaluating the adequacy and effectiveness of my notice programs, courts have repeatedly recognized my work as an expert.  For example, in ***DeHoyos, et al. v. Allstate Ins. Co***., No. SA-01-CA-1010 (W.D.Tx.). In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

> [T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. … This program was vigorous and specifically structured to reach the African-American and Hispanic class members.  Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts.

*And recently in* ***Stern v. AT&T Mobility Wireless***, No. 09-cv-1112 CAS-AGR (C.D.Cal.).  In the Final Approval Order, the Honorable Christina A. Snyder stated:

> [T]he Court finds that the Parties have fully and adequately effectuated the Notice Plan, as required by the Preliminary Approval Order, and, in fact, have achieved better results than anticipated or required by the Preliminary Approval Order.

a.  ***Gemelas v. The Dannon Company***, No. 1:08-cv-00236 (N.D. Ohio, E. Div.).  In the Judgment, Final Order, and Decree, Judge Dan Aaron Polster approved the notice program, stating:

> In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, the Class Action Settlement Administrator caused the Class Notice to be distributed on a nationwide basis in magazines and newspapers (with circulation numbers exceeding 81 million) specifically chosen to reach Class Members.  In addition, the settlement was widely publicized using Internet banner ads, press releases, audio news releases, via a Settlement Website, and through a toll-free number. … The Declaration of Jeanne C. Finegan [sic], attesting to the dissemination of the Class Notice, demonstrates compliance with this Court's Preliminary Approval Order. … The distribution of the Class Notice constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. 1715, and any other applicable law.

b.  ***In re Expedia Hotel Taxes and Fees Litigation,*** Case No. 05-2-02060-1 SEA, Superior Court of Washington in and for King County (2009).  In the Order Granting Final Approval of Class Action Settlement, Judge Monica Benton stated:

> The Notice of the Settlement given to the Class … was the best notice practicable under the circumstances.  All of these forms of Notice directed Class Members to a Settlement Website providing key Settlement documents including instructions on how Class Members could exclude themselves from the Class, and how they could object to or comment upon the Settlement.  The Notice provided due and adequate notice of these proceeding and of the matters set forth in the Agreement to all persons entitled to such notice, and said notice fully satisfied the requirements of CR 23 and due process.

c.  ***Stefanyshyn v. Consolidated Industries,*** Case No. 79 D 01-9712-CT-59, Tippecanoe County Sup. Ct. (Ind.) (May 28, 2009).  In the Order Granting Final Approval of Settlement, Judge Randy Williams stated:

> The long and short form notices provided a neutral, informative, and clear explanation of the Settlement… The proposed notice program was properly designed, recommended, and implemented … and constitutes the "best practicable" notice of the proposed Settlement. The form and content of the notice program satisfied all applicable legal requirements… The comprehensive class notice educated Settlement Class members about the defects in Consolidated furnaces and warned them that the continued use of their furnaces created a risk of fire and/or carbon monoxide. This alone provided substantial value.

     d.    ***Berger, et al., v. Property ID Corporation, et al.,*** CV 05-5373-GHK (CWx) (C.D.Cal.):

> The notice of the proposed settlements provided to the Classes satisfies the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and the requirements of due process.

     e.    ***McGee v. Continental Tire North America, Inc. et al***, Civ. No. 06-6234-(GEB) (D.N.J.):

> The Class Notice, the Summary Settlement Notice, the website, the toll-free telephone number, and all other notices in the Agreement, and the notice methodology implemented pursuant to the Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the settlement and their rights under the settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notification; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 20 U.S.C. Sec. 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.

f.  ***In re: Canadian Air Cargo Shipping Class Actions*** (Ontario Superior Court of Justice, Court File No. 50389CP, Supreme Court of British Columbia, Quebec Superior Court).  In the Endorsement of Settlement, Ontario Superior Court of Justice Regional Senior Justice Lynne C. Leitch stated:

> I am satisfied the proposed form of notice meets the requirements of s. 17(6) of the CPA and the proposed method of notice is appropriate.

g.  ***In re: Nortel Network Corp., Sec. Litig.***, Civil Action No. 01-CV-1855 (RMB) Master File No. 05 MD 1659 (LAP) (S.D.N.Y.). *See* slip op. at 4 (S.D.N.Y. Dec. 26, 2006).  Regarding the B.C. Canadian notification effort: *Jeffery v. Nortel Networks*, [2007] BCSC 69 at para. 50, the Honourable Mr. Justice Groberman said:

> The efforts to give notice to potential class members in this case have been thorough.  There has been a broad media campaign to publicize the proposed settlement and the court processes.  There has also been a direct mail campaign directed at probable investors.  I am advised that over 1.2 million claim packages were mailed to persons around the world.  In addition, packages have been available through the worldwide web site www.nortelsecuritieslitigation.com on the Internet.  Toll-free telephone lines have been set up, and it appears that class counsel and the Claims Administrator have received innumerable calls from potential class members.  In short, all reasonable efforts have been made to ensure that potential members of the class have had notice of the proposal and a reasonable opportunity was provided for class members.

And of the U.S. notice program, the Honorable Loretta A. Preska stated:

> The form and method of notifying the U.S. Global Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement … constituted

Declaration of Jeanne C. Finegan, APR

> the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

     h.    ***Lucas v. KMART Corporation***, Civil Action No 99-CV-01923 (JLK) (D. Colo. 2006):

> [T]he Court finds this extensive notice program to be more than adequate and approves it as the 'best notice practicable under the circumstances' and consistent with the requirements of F.R.C.P. 23 and due process.

     i.    ***Varacallo v. Massachusetts Mutual Life Insurance Company***, Civil Action No. 04-2702 (JLL) (D.N.J. 2004):

> [A]ll of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices.

     j.    ***Wilson v. Massachusetts Mutual Life Insurance Company***, Case No. D-101-CV 98-02814 (First Judicial District Court County of Santa Fe State of New Mexico 2002):

> The Notice Plan was the best practicable and reasonably calculated, under the circumstances of the action . . . [and] that the notice meets or exceeds all applicable requirements of law, including Rule 1-023(C)(2) and (3) and 1-023(E), NMRA 2001, and the requirements of federal and/or state constitutional due process and any other applicable law.

     k.    ***Thomas A. Foster and Linda E. Foster v. ABTco Siding***, Case No. 95-151-M (Circuit Court of Choctaw County, Alabama 2000):

> The notice program constitutes the best notice practicable under the circumstances of this Action. This finding is based on the overwhelming evidence of the adequacy of the notice program.

Declaration of Jeanne C. Finegan, APR

l.  ***Sparks v. AT&T Corporation***, Case No. 96-LM-983 (Third Judicial Circuit Madison County, Illinois 2001). In granting final approval to the settlement, the Court commented on the notification program as follows:

> The Court further finds that the notice of the proposed settlement was sufficient and furnished Class Members with the information they needed to evaluate whether to participate in or opt out of the proposed settlement. The Court therefore concludes that the notice of the proposed settlement met all requirements required by law, including all Constitutional requirements.

m.  ***In re: Louisiana-Pacific Inner-Seal Siding***, Civil Action Nos. 879-JE, and 1453-JE (D. Or. 1995, 1999):

> [T]he notice given to the members of the Class fully and accurately informed the Class members of all material elements of the settlement…[through] a broad and extensive multi-media notice campaign. . . .

9.  Additionally, I have published extensively on various aspects of legal noticing, including the following publications and articles:

a.  Co-Author, with Hon. Dickran Tevrizian, "*Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape,*" BNA Class Action Litigation Report, 12 CLASS 464, 5/27/11.

b.  Co-Author, with Hon. Dickran Tevrizian, "*Your Insight: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape*, TXLR, Vol. 26, No. 21, 5/26/2011.

c.  Author, *Five Key Considerations for a Successful International Notice Program*, BNA Class Action Litigation Report, 4/9/10 Vol. 11, No. 7 p. 343.

d.      Quoted: *Technology Trends Pose Novel Notification Issues for Class Litigators*, BNA Electronic Commerce and Law Report, 15, ECLR 109, 1/27/10.

e.      Author, *Legal Notice: R U ready 2 adapt?*  BNA Class Action Litigation Report, Vol. 10, No. 14, 7/24/2009, pp. 702-703.

f.      Author, *On Demand Media Could Change the Future of Best Practicable Notice*, BNA Class Action Litigation Report, Vol. 9, No. 7, 4/11/2008, pp. 307-310.

g.      Quoted in, *Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty*, Warranty Week, February 28, 2007, available at www.warrantyweek.com/archive/ww20070228.html.

h.      Co-Author, *Approaches to Notice in State Court Class Actions*, For The Defense, Vol. 45, No. 11, November, 2003.

i.      Author, *The Web Offers Near, Real-Time Cost Efficient Notice*, American Bankruptcy Institute Journal, Vol. XXII, No. 5, 2003.

j.      Author, *Determining Adequate Notice in Rule 23 Actions*, For The Defense, Vol. 44, No. 9, September, 2002.

k.      Co-Author, *The Electronic Nature of Legal Noticing*, American Bankruptcy Institute Journal, Vol. XXI, No. 3, April, 2002.

l.      Author, *Three Important Mantras for CEO's and Risk Managers in 2002*, International Risk Management Institute, irmi.com/, January, 2002.

m.      Co-Author, *Used the Bat Signal Lately*, The National Law Journal, Special Litigation Section, February 19, 2001.

n.      Author, *How Much is Enough Notice*, Dispute Resolution Alert, Vol. 1, No. 6, March, 2001.

o.      Author, *Monitoring the Internet Buzz*, The Risk Report, Vol. XXIII, No. 5, January, 2001.

p.  Author, *High-Profile Product Recalls Need More Than the Bat Signal*, International Risk Management Institute, irmi.com/, July 2001.

q.  Author, *The Great Debate - How Much is Enough Legal Notice?* American Bar Association -- Class Actions and Derivatives Suits Newsletter, Winter 1999.

r.  Author, *What are the best practicable methods to give notice?* Georgetown University Law Center Mass Tort Litigation Institute, CLE White Paper: Dispelling the communications myth -- A notice disseminated is a notice communicated, November 1, 2001.

10.  In addition, I have lectured or presented extensively on various aspects of legal noticing.  A sample list includes the following:

a.  CLE International, Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011.

b.  Consumer Attorneys of San Diego (CASD), Faculty        Panelist, "21st Century Class Notice and Outreach," 3nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010.

c.  Consumer Attorneys of San Diego (CASD), Faculty Panelist, "The Future of Notice," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2009.

d.  American Bar Association, Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements:  The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard."

e.  American Bar Association, Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008.

f.    Faculty Panelist, Women Lawyers Association of Los Angeles (WLALA) CLE Presentation, "The Anatomy of a Class Action." Los Angeles, CA, February 2008.

g.    Faculty Panelist, Practicing Law Institute (PLI) CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures -- "Evolving Notice Standards in the Internet Age." *New York/Boston* (simulcast) March, 2006; *Chicago*, April, 2006; and *San Francisco*, May 2006.

h.    Expert Panelist, U.S. Consumer Product Safety Commission. I was the only legal notice expert invited to participate as an expert to the Consumer Product Safety Commission to discuss ways in which the CPSC could enhance and measure the recall process. As an expert panelist, I discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts. Bethesda, MD, September 2003.

i.    Expert Speaker, American Bar Association. Presentation: "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits, Chicago, August 6, 2001.

11.    I am accredited ("APR") in Public Relations by the Universal Accreditation Board, a program administered by the Public Relations Society of America and recognized by the Canadian Public Relations Society ("CPRS").

## NOTICE PROGRAM CONSIDERATIONS

12.    I understand that Visa's best analysis is that there are approximately 4,000,000 individuals who are potential member of the class described above. However,

Visa's counsel also states that approximately 500,000 potential class members can be reasonably ascertained by Visa. Therefore, the Notice Program will include the following elements:

      a.    Direct Notice by U.S. mail of a long form notice to approximately 500,000 potential class members who can be reasonably ascertained from the Defendant's records.

      b.    A short-form "Summary" notice will be published in three generally circulated magazines in the six targeted states.

      c.    Banner advertising on widely viewed websites throughout the six-state region, which I have chosen, as discussed below, with a link directly to the informational website.

      d.    An informational website on which, in addition to the Website Notice, other important documents will be posted in both English and Spanish.

      e.    A toll-free information number, 1 (888) 312-5688, where potential Class Members may call for more information.

## NOTICE PUBLICATION

13.    Utilizing nationally syndicated media research data; we have designed the notice publication component described below to reach potential Class Members. The exact definition of "purchase a prepaid debit card" is not available in our research. For that reason as well as the fact that we understand that the cards could have been purchased by anyone within these six states, we used a broader target of "People who live in the states of California, Florida, Maryland, Nevada, New Hampshire and Washington." The target audience is designed to enhance the direct mail and email outreach effort to include all members of the Class. In combination, the media and direct outreach program, more fully described below, are estimated to reach 73 percent of the targeted Class Members in this case.

## METHODOLOGY

14.     To appropriately design and target the notice publication component of the Notice Program, we have used a scientific methodology that is used throughout the advertising industry and that has been embraced by courts in the United States.  See *Daubert v. Merrell Dow Pharmaceuticals* 509 U.S. 579 (1993) (experts must apply a technique that may be tested by peers and use industry accepted methodology); *Kumho Tire Co. v. Carmichael* 526 U.S. 137 (1999) (same).  The methodology discussed in this declaration has been accepted by numerous courts, including those listed in paragraphs 7 and 8, above.

15.     Media is typically purchased based on both demographic (*i.e.*, age, gender, ethnicity, income, education) and psychographic (*i.e.*, lifestyle, product and brand preference, media usage, and media definition) characteristics.    Based on these characteristics, populations will tend to use media in differing ways.

16.     In order to determine the most appropriate media to employ in this notice publication program, we have studied data provided by nationally syndicated media research bureaus, including GfK Mediamark Research and Intelligence, LLC ("MRI") and comScore.[1]   Media research bureaus scientifically characterize populations in clusters by demographic factors including age, ethnicity, income, geographical distribution, income, gender, and profession.  Once the demographic profile has been established, research continues to include a target audience's psychographic characteristics, such as their choice of media.  A media study can define a target audience by product, service, and brand usage habits.  The study can identify which media

---

[1] MRI is a nationally syndicated research tool.  It is the leading supplier of multi-media audience research, and provides comprehensive reports on demographic, lifestyle, product usage and media exposure.  MRI conducts more than 26,000 personal interviews annually to gather their information, and is used by more than 450 advertising agencies as the basis for the majority of media and marketing campaigns.  comScore is a global Internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and Internet usage data.  comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. comScore panelists also participate in survey research that captures and integrates their attitudes and intentions.

channels are favored by the target audience (*i.e.*, the potential class members).   For instance, what magazines are they reading, how frequently, and whether they are reading the daily newspaper or visiting a favored website.

17.     Based on these research tools, we are able to measure and report to the Court the percentage of the target Class that will be reached by the notice publication component and how many times the target audience had the opportunity to see the message.   In advertising, this is commonly referred to as a "Reach and Frequency" analysis, where "Reach" refers to the estimated percentage of the unduplicated audience exposed to the campaign, and "Frequency" refers to how many times, on average, the target audience had the opportunity to see the message.   The calculations are used by advertising and communications firms worldwide, and have become a critical element to help provide the basis for determining adequacy of notice in class actions.

## APPLICATION

18.     The first step is to establish the demographic profile.   Here, the demographic profile, as measured by MRI, is "People who live in the states of California, Florida, Maryland, Nevada, New Hampshire and Washington.[2]"   In this case, the broad target audience will include all adults and parents who purchased a prepaid debit card for their children.

19.     Once the target has been identified, we then conduct a quintile analysis of each medium to measure the sample respondents' usage of a medium.   The data is segmented into five equally sized groups (by population), each of which is called a quintile, and then arranged by heaviest to lightest consumption of a medium.   For our purposes, as set forth in the chart below, we are looking at the top three quintiles, which

---

[2] Due to the way MRI reports the data, the target also includes people who live in ME, VT, DE, DC, WV, OR, NM, AZ AND UT. However, media is only being purchased to target the six states included in the Class: CA, FL, MD, NV, NH and WA.

Declaration of Jeanne C. Finegan, APR

are the heaviest users of a given medium, e.g., in this case, medium to heavy users of magazines and the Internet.

| NOTICE PROGRAM DEVELOPMENT | |
|---|---|
| Media Usage Quintiles | |
| Media | Percentage of Target Audience That Are Medium to Heavy Users |
| Internet | 62.1% |
| Magazine | 60.1% |

*Source: MRI Doublebase 2010*

20.    This information enables us to prioritize medium selection, and ultimately prepare a statistical analysis for the Court estimating, based on our recommendations, what percentage of the target audience might be reached by the proposed legal notice program.  Based on this analysis, we selected the publication program described below.

## MAGAZINE

21.    As the quintiles indicate, the population of individuals who reside in the states of California, Florida, Maryland, Nevada, New Hampshire and Washington are also readers of magazines.  The notice program includes three highly circulated state or regional editions of magazines, including *People*[3] *Magazine, Parade Magazine* and *USA Weekend.*

---

[3] *People Magazine's* distribution for this program includes the six states plus distribution in Boston MA, and Washington D.C. Those markets are part of *People Magazine's* existing distribution in these states and cannot be broken out separately.

| MAGAZINE AND NEWSPAPER CIRCULATION AND READERSHIP | | | | |
|---|---|---|---|---|
| Title | Circulation within 6 states | Newspapers in 6 states | Insertions | Total Readership[4] |
| *People Magazine* | 967,000 | N/A | 1 | 11,826,410 |
| *Parade* | 7,160,575 | 68 | 1 | 17,328,591 |
| *USA Weekend* | 5,332,605 | 126 | 1 | 11,038,492 |

*People Magazine* is a widely circulated weekly publication. Although *People Magazine's* circulation in the six targeted states is 967,000, it reports one of the largest *pass-along rates*, or readers per copy, of any magazine at approximately 12.23 readers per copy

## INTERNET

22.     Recognizing that nearly 75 percent of all Americans are now online, the proposed Notice Program employs banner advertising, geo-targeted to the six states included in this class.  According to MRI, 76 percent of our target have used the internet in the past 30 days. These highly visible banner ads will allow potential class members to self-identify as class members and then, if they choose, to click on the banner to be linked to the official Settlement web page.   The Internet program includes the following websites and networks:

## AOL RUN OF SITE

AOL is one of the leading web properties in the United States. AOL reports on the top news headlines, sports scores, entertainment news, weather, etc. A network buy on AOL could include advertising on any of their many "channels" with their network such as News, Travel, Health, Autos, among others. According to comScore March 2011 data,

---

[4] Readership numbers assume that the pass along rate within the six states in the notice plan models National pass along rates.

over 14.5 million people visit AOL.com each day averaging about 21.5 minutes on the site per day. According to AOL, their users visit the site an average of 2.6 times per day and they rank number one in all key engagement statistics (minutes per page, average minutes per day and average minutes per visit) among the "big 3" (AOL, MSN, Yahoo).

### AOL's BLACK VOICES

With over 4.3 million visitors per month nationwide, Black Voices is one of the largest African American websites. Content is targeted to African Americans and features information on African American lifestyle, news, entertainment, etc. The average user visits Black Voices nearly six times per month. Users are very active on the sites and are able to share their thoughts online and connect with other users.

### YAHOO! NETWORK

Yahoo! is one of the most trafficked Internet destinations worldwide. According to comScore Media Metrix, in March 2011 Yahoo reached almost 91 percent of all U.S. adults age 18 and older with over 70 million average daily visitors. A run of Network buy on Yahoo! could include banner advertising on the many Yahoo! Sites, such as News, Finance and Sports. It also may include advertising on Yahoo's network of sites which includes hundreds of publisher partners' sites and many from comScore's top 250 list.

### YAHOO! E-MAIL

Yahoo! E-mail is a free web-based e-mail service offered by signing up for a Yahoo! account. According to comScore, in March 2011, Yahoo! E-mail had over 27.6 million daily visitors who averaged 21.4 minutes on the site per day.

**MSN HOTMAIL**

MSN Hotmail is a free <u>web-based email</u> service operated by <u>Microsoft</u> as part of its <u>Windows Live</u> group. It is currently the second largest web-based email service. According to comScore March 2011 data, MSN Hotmail had over 11 million daily visitors. Visitors spent an average of 28.9 minutes per day.

**24/7 NETWORK**

24/7 Real Media, Inc. was named among the top five ad networks in the U.S. according to comScore's June 2010 rankings. The network includes over 2,000 web properties such as: Oprah, ivillage, Weather, MySpace and FoxNews among many others. Advertising may be purchased throughout the entire network or within specific "channels" such as technology, news, sports, etc. According to comScore, the network had over 40.7 million visitors in March 2011, accounting for 82 of all online adults 18 years old or older.

**UNIVISION**

Univison.com touts itself as the number one visited Spanish-language website among U.S. online Hispanics. According to comScore, 488,000 daily users visited the site in March 2011, spending an average of 14.6 minutes per day.

**FACEBOOK**

Facebook is the number one social networking site on the web. Facebook consistently ranks in the top 3 highest trafficked websites overall with over 50 percent of active users logging on to Facebook each day. According to comScore's 2010 Digital Year in Review, Facebook ranked number one in terms of time spent online in August 2010 and accounts for 12.3 percent of total time spent online. In December 2010, Facebook averaged just over 150 million unique visitors for the month – that's almost half of the entire U.S. population!

**TOP CLASS ACTIONS**

Top Class Actions states that they are "the only online business approved to act as the Official Internet Provider in Federal Court for multiple class action lawsuits." The website provides details on the most recent class action lawsuits in the country. As reported by the site, their monthly visitors total 10,000 plus.

## WEBSITE

23.     Importantly, the Notice Program includes an official settlement website, www.callrecordingsettlement.com.   The website will serve as a landing page for the banner advertising, where Class Members may obtain further information about the class actions, their rights, dates and deadlines and related information.   The website address will be prominently displayed in the publication notice, and also will be provided on the toll-free telephone helpline.   The website established and maintained by GCG will be accessible 24 hours a day, 7 days a week.

## TELEPHONE HELPLINE

24.     GCG will establish and maintain a 24-hour toll-free telephone line, 1 (888) 312-5688, where callers may obtain information about the class actions.   Once a caller connects to the helpline, he or she will hear an Interactive Voice Recording ("IVR").   The IVR will provide detailed information to callers about this Settlement, including the contact information for plaintiffs' counsel should they have additional questions, and allow members of the   Settlement Class to request a detailed notice and claim form.   The telephone number will be prominently displayed in the direct mail and email Notice, the publication Notice, and on the website.

## CONCLUSION

25.    Using tools and methods accepted within the advertising industry, combined, the direct mail and media outreach effort described in this program has been reasonably calculated to reach an estimated 73 percent of the Settlement Class, which provides the best notice practicable under the circumstances, and is consistent with other court approved notice programs in similar matters.

26.    I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 3, 2011, in Los Angeles, California.


JEANNE C. FINEGAN, APR

Declaration of Jeanne C. Finegan, APR

# Exhibit A

**Biography of Jeanne C. Finegan**

# JEANNE C. FINEGAN, APR

## **BIOGRAPHY**

Jeanne Finegan is Senior Vice President of The Garden City Group, Inc. ("GCG"), and GCG Communications, a division of GCG. She has more than 20 years of communications and advertising experience and is an internationally recognized expert in class action notification campaigns. Ms. Finegan is accredited in Public Relations (APR) by the Universal Accreditation Board, a program administered by the Public Relations Society of America. She is also recognized by the Canadian Public Relations Society.

Ms. Finegan has provided testimony before Congress on issues of notice, and expert testimony in both state and federal courts regarding notification campaigns.  She has also conducted media audits of proposed notice programs to assess their adequacy under Fed R. Civ. P. 23(c)(2) and similar state class action statutes.  Most recently, Ms. Finegan has been recognized by Canadian courts as a legal notice expert.

Ms. Finegan has lectured, published and has been cited extensively on various aspects of legal noticing, product recall and crisis communications and has served the Consumer Product Safety Commission as an expert to determine ways in which the Commission can increase the effectiveness of its product recall campaigns.

Ms. Finegan has also developed and implemented many of the nation's largest and most high profile legal notice communication and advertising programs. In the course of her class action experience, courts have recognized the merits of, and admitted expert testimony based on, her scientific evaluation of the effectiveness of notice plans.  She has designed legal notices for a wide range of class actions and consumer matters that include product liability, construction defect, anti-trust, medical/pharmaceutical, human rights, civil rights, telecommunication, media, environment, securities, banking, insurance, mass tort, restructuring and product recall.

## **JUDICIAL COMMENTS AND LEGAL NOTICE CASES**

In evaluating the adequacy and effectiveness of Ms. Finegan's notice campaigns, courts have repeatedly recognized Ms. Finegan's excellent work.  The following excerpts provide some examples of such judicial approval.

***DeHoyos, et al. v. Allstate Ins. Co.***, No. SA-01-CA-1010 (W.D.Tx.).  In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

> *[T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. … This program was vigorous and specifically structured to reach the African-American and Hispanic class members.  Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts.  Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national magazines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish.*

*Stefanyshyn v. Consolidated Industries*, No. 79 D 01-9712-CT-59 (Tippecanoe County Sup. Ct., Ind.). In the Order Granting Final Approval of Settlement, Judge Randy Williams stated:

> *The long and short form notices provided a neutral, informative, and clear explanation of the Settlement. … The proposed notice program was properly designed, recommended, and implemented … and constitutes the "best practicable" notice of the proposed Settlement. The form and content of the notice program satisfied all applicable legal requirements. … The comprehensive class notice educated Settlement Class members about the defects in Consolidated furnaces and warned them that the continued use of their furnaces created a risk of fire and/or carbon monoxide. This alone provided substantial value.*

*McGee v. Continental Tire North America, Inc. et al*, No. 06-6234-(GEB) (D.N.J.).

> *The Class Notice, the Summary Settlement Notice, the web site, the toll-free telephone number, and all other notices in the Agreement, and the notice methodology implemented pursuant to the Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the settlement and their rights under the settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notification; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 20 U.S.C. Sec. 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.*

*Gemelas v. The Dannon Company*, No. 1:08-cv-00236 (N.D. Ohio, E. Div.). In the Judgment, Final Order, and Decree, Judge Dan Aaron Polster approved the notice program, stating:

> *In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, the Class Action Settlement Administrator caused the Class Notice to be distributed on a nationwide basis in magazines and newspapers (with circulation numbers exceeding 81 million) specifically chosen to reach Class Members. In addition, the settlement was widely publicized using Internet banner ads, press releases, audio news releases, via a Settlement Website, and through a toll-free number. … The Declaration of Jeanne C. Finnegan [sic], attesting to the dissemination of the Class Notice, demonstrates compliance with this Court's Preliminary Approval Order. … The distribution of the Class Notice constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. 1715, and any other applicable law.*

*Varacallo, et al. v. Massachusetts Mutual Life Insurance Company, et al.*, No. 04-2702 (JLL) (D.N.J.). The Court stated that:

> [A]*ll of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices. … By working with a nationally syndicated media research firm, [Finegan's firm] was able to define a target audience for the MassMutual Class Members, which provided a valid basis for determining the magazine and newspaper preferences of the Class Members. (Preliminary Approval Order at p. 9). . . . The Court agrees with Class Counsel that this was more than adequate. (Id. at § 5.2).*

*In re: Nortel Network Corp., Sec. Litig.*, No. 01-CV-1855 (RMB) Master File No. 05 MD 1659 (LAP) (S.D.N.Y.). Ms. Finegan designed and implemented the extensive United States and Canadian notice

programs in this case. The Canadian program was published in both French and English, and targeted virtually all investors of stock in Canada. *See* www.nortelsecuritieslitigation.com. Of the U.S. notice program, the Honorable Loretta A. Preska stated:

> *The form and method of notifying the U.S. Global Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement ... constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

Regarding the B.C. Canadian Notice effort: *Jeffrey v. Nortel Networks*, [2007] BCSC 69 at para. 50, the Honourable Mr. Justice Groberman said:

> *The efforts to give notice to potential class members in this case have been thorough. There has been a broad media campaign to publicize the proposed settlement and the court processes. There has also been a direct mail campaign directed at probable investors. I am advised that over 1.2 million claim packages were mailed to persons around the world. In addition, packages have been available through the worldwide web site nortelsecuritieslitigation.com on the Internet. Toll-free telephone lines have been set up, and it appears that class counsel and the Claims Administrator have received innumerable calls from potential class members. In short, all reasonable efforts have been made to ensure that potential members of the class have had notice of the proposal and a reasonable opportunity was provided for class members to register their objections, or seek exclusion from the settlement.*

*Mayo v. Walmart Stores and Sam's Club*, No. 5:06 CV-93-R (W.D.Ky.). In the Order Granting Final Approval of Settlement, Judge Thomas B. Russell stated:

> *According to defendants' database, the Notice was estimated to have reached over 90% of the Settlement Class Members through direct mail. The Settlement Administrator ... has classified the parties' database as 'one of the most reliable and comprehensive databases [she] has worked with for the purposes of legal notice.'... The Court thus reaffirms its findings and conclusions in the Preliminary Approval Order that the form of the Notice and manner of giving notice satisfy the requirements of Fed. R. Civ. P. 23 and affords due process to the Settlement Class Members.*

*Lucas, et al. v. Kmart Corp.*, No. 99-cv-01923 (D.Colo.), wherein the Court recognized Jeanne Finegan as an expert in the design of notice programs, and stated:

> *The Court finds that the efforts of the parties and the proposed Claims Administrator in this respect go above and beyond the "reasonable efforts" required for identifying individual class members under F.R.C.P. 23(c)(2)(B).*

*In re: Johns-Manville Corp.* **(Statutory Direct Action Settlement, Common Law Direct Action and Hawaii Settlement)**, No 82-11656, 57, 660, 661, 665-73, 75 and 76 (BRL) (Bankr. S.D.N.Y.). The nearly half-billion dollar settlement incorporated three separate notification programs, which targeted all persons who had asbestos claims whether asserted or unasserted, against the Travelers Indemnity Company. In the Findings of Fact and Conclusions of a Clarifying Order Approving the Settlements, slip op. at 47-48 (Aug. 17, 2004), the Honorable Burton R. Lifland, Chief Justice, stated:

> *As demonstrated by Findings of Fact (citation omitted), the Statutory Direct Action Settlement notice program was reasonably calculated under all circumstances to apprise the affected individuals of the proceedings and actions taken involving their interests, Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), such program did apprise the*

> *overwhelming majority of potentially affected claimants and far exceeded the minimum notice required. . . . The results simply speak for themselves.*

***Pigford v. Glickman and U.S. Department of Agriculture*, No. 97-1978. 98-1693 (PLF) (D.D.C.).** This matter was the largest civil rights case to settle in the United States in over 40 years. The highly publicized, nationwide paid media program was designed to alert all present and past African-American farmers of the opportunity to recover monetary damages against the U.S. Department of Agriculture for alleged loan discrimination. In his Opinion, the Honorable Paul L. Friedman commended the parties with respect to the notice program, stating;

> *The parties also exerted extraordinary efforts to reach class members through a massive advertising campaign in general and African American targeted publications and television stations. . . . The Court concludes that class members have received more than adequate notice and have had sufficient opportunity to be heard on the fairness of the proposed Consent Decree.*

***In re: Louisiana-Pacific Inner-Seal Siding Litig.*, Nos. 879-JE, and 1453-JE (D.Or.).** Under the terms of the Settlement, three separate notice programs were to be implemented at three-year intervals over a period of six years. In the first notice campaign, Ms. Finegan implemented the print advertising and Internet components of the Notice program. In approving the legal notice communication plan, the Honorable Robert E. Jones stated:

> *The notice given to the members of the Class fully and accurately informed the Class members of all material elements of the settlement…[through] a broad and extensive multi-media notice campaign.*

Additionally, with regard to the third-year notice program for Louisiana-Pacific, the Honorable Richard Unis, Special Master, commented that the notice was:

> *…well formulated to conform to the definition set by the court as adequate and reasonable notice. Indeed, I believe the record should also reflect the Court's appreciation to Ms. Finegan for all the work she's done, ensuring that noticing was done correctly and professionally, while paying careful attention to overall costs. Her understanding of various notice requirements under Fed. R. Civ. P. 23, helped to insure that the notice given in this case was consistent with the highest standards of compliance with Rule 23(d)(2).*

***In re: Expedia Hotel Taxes and Fees Litigation*, No. 05-2-02060-1 (SEA) (Sup. Ct. of Wash. in and for King County).** In the Order Granting Final Approval of Class Action Settlement, Judge Monica Benton stated:

> *The Notice of the Settlement given to the Class … was the best notice practicable under the circumstances. All of these forms of Notice directed Class Members to a Settlement Website providing key Settlement documents including instructions on how Class Members could exclude themselves from the Class, and how they could object to or comment upon the Settlement. The Notice provided due and adequate notice of these proceeding and of the matters set forth in the Agreement to all persons entitled to such notice, and said notice fully satisfied the requirements of CR 23 and due process.*

***Rene Rosales v. Fortune Ins. Co.*, No. 99-04588 CA (41) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).** Ms. Finegan provided expert testimony in this matter. She conducted an audit on behalf of intervening attorneys for the proposed notification to individuals insured with personal injury insurance. Based upon the audit, Ms. Finegan testified that the proposed notice program was inadequate. The Court agreed and signed an Order Granting Intervenors' Objections to Class Action Settlement, stating,

> *The Court finds that Ms. Finegan is qualified as an expert on class notice and effective media campaigns. The Court finds that her testimony is credible and reliable.*

**Thomas A. Foster and Linda E. Foster v. ABTco Siding Litigation**, No. 95-151-M (Cir. Ct., Choctaw County, Ala.). This litigation focused on past and present owners of structures sided with Abitibi-Price siding. The notice program that Ms. Finegan designed and implemented was national in scope and received the following praise from the Honorable J. Lee McPhearson:

> *The Court finds that the Notice Program conducted by the Parties provided individual notice to all known Class Members and all Class Members who could be identified through reasonable efforts and constitutes the best notice practicable under the circumstances of this Action. This finding is based on the overwhelming evidence of the adequacy of the notice program. ... The media campaign involved broad national notice through television and print media, regional and local newspapers, and the Internet (see id. ¶¶9-11) The result: over 90 percent of Abitibi and ABTco owners are estimated to have been reached by the direct media and direct mail campaign.*

**Wilson v. Massachusetts Mut. Life Ins. Co.**, No. D-101-CV 98-02814 (First Judicial Dist. Ct., County of Santa Fe, N.M.). This was a nationwide notification program that included all persons in the United States who owned, or had owned, a life or disability insurance policy with Massachusetts Mutual Life Insurance Company and had paid additional charges when paying their premium on an installment basis. The class was estimated to exceed 1.6 million individuals. www.insuranceclassclaims.com. In granting preliminary approval to the settlement, the Honorable Art Encinias found:

> *[T]he Notice Plan [is] the best practicable notice that is reasonably calculated, under the circumstances of the action. ...[and] meets or exceeds all applicable requirements of the law, including Rule 1-023(C)(2) and (3) and 1-023(E), NMRA 2001, and the requirements of federal and/or state constitutional due process and any other applicable law.*

**Sparks v. AT&T Corp.**, No. 96-LM-983 (Third Judicial Cir., Madison County, Ill.). The litigation concerned all persons in the United States who leased certain AT&T telephones during the 1980's. Ms. Finegan designed and implemented a nationwide media program designed to target all persons who may have leased telephones during this time period, a class that included a large percentage of the entire population of the United States. In granting final approval to the settlement, the Court found:

> *The Court further finds that the notice of the proposed settlement was sufficient and furnished Class Members with the information they needed to evaluate whether to participate in or opt out of the proposed settlement. The Court therefore concludes that the notice of the proposed settlement met all requirements required by law, including all Constitutional requirements.*

**In re: Georgia-Pacific Toxic Explosion Litig.**, No. 98 CVC05-3535 (Ct. of Common Pleas, Franklin County, Ohio). Ms. Finegan designed and implemented a regional notice program that included network affiliate television, radio and newspaper. The notice was designed to alert adults living near a Georgia-Pacific plant that they had been exposed to an air-born toxic plume and their rights under the terms of the class action settlement. In the Order and Judgment finally approving the settlement, the Honorable Jennifer L. Bunner stated:

> *[N]otice of the settlement to the Class was the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The Court finds that such effort exceeded even reasonable effort and that the Notice complies with the requirements of Civ. R. 23(C).*

*In re: American Cyanamid*, No. CV-97-0581-BH-M (S.D.Al.). The media program targeted Farmers who had purchased crop protection chemicals manufactured by American Cyanamid. In the Final Order and Judgment, the Honorable Charles R. Butler Jr. wrote:

> *The Court finds that the form and method of notice used to notify the Temporary Settlement Class of the Settlement satisfied the requirements of Fed. R. Civ. P. 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all potential members of the Temporary Class Settlement.*

*In re: First Alert Smoke Alarm Litig.*, No. CV-98-C-1546-W (UWC) (N.D.Al.). Ms. Finegan designed and implemented a nationwide legal notice and public information program. The public information program ran over a two-year period to inform those with smoke alarms of the performance characteristics between photoelectric and ionization detection. The media program included network and cable television, magazine and specialty trade publications. In the Findings and Order Preliminarily Certifying the Class for Settlement Purposes, Preliminarily Approving Class Settlement, Appointing Class Counsel, Directing Issuance of Notice to the Class, and Scheduling a Fairness Hearing, the Honorable C.W. Clemon wrote that the notice plan:

> *...constitutes due, adequate and sufficient notice to all Class Members; and (v) meets or exceeds all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Alabama State Constitution, the Rules of the Court, and any other applicable law.*

*In re: James Hardie Roofing Litig.*, No. 00-2-17945-65SEA (Sup. Ct. of Wash., King County). The nationwide legal notice program included advertising on television, in print and on the Internet. The program was designed to reach all persons who own any structure with JHBP roofing products. In the Final Order and Judgment, the Honorable Steven Scott stated:

> *The notice program required by the Preliminary Order has been fully carried out... [and was] extensive. The notice provided fully and accurately informed the Class Members of all material elements of the proposed Settlement and their opportunity to participate in or be excluded from it; was the best notice practicable under the circumstances; was valid, due and sufficient notice to all Class Members; and complied fully with Civ. R. 23, the United States Constitution, due process, and other applicable law.*

*In re: Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litigation*, No. 1:08-md-01982 RDB (D. Md. N. Div.) (*"The notice, in form, method, and content, fully complied with the requirements of Rule 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled to notice of the settlement."*)

*Sager v. Inamed Corp. and McGhan Medical Breast Implant Litigation*, No. 01043771 (Sup. Ct. Cal., County of Santa Barbara) (*"Notice provided was the best practicable under the circumstances."*).

*Deke, et al. v. Cardservice Internat'l,* Case No. BC 271679, slip op. at 3 (Sup. Ct. Cal., County of Los Angeles) (*"The Class Notice satisfied the requirements of California Rules of Court 1856 and 1859 and due process and constituted the best notice practicable under the circumstances."*).

*Levine, et al. v. Dr. Philip C. McGraw, et al.*, Case No. BC 312830 (Los Angeles County Super. Ct., Cal.) (*"[T]he plan for notice to the Settlement Class ... constitutes the best notice practicable under the circumstances and constituted due and sufficient notice to the members of the Settlement Class ... and satisfies the requirements of California law and federal due process of law."*).

*In re: Canadian Air Cargo Shipping Class Actions*, Court File No. 50389CP, Ontario Superior Court of Justice, Supreme Court of British Columbia, Quebec Superior Court (*"I am satisfied the proposed form of notice meets the requirements of s. 17(6) of the CPA   and the proposed method of notice is appropriate."*).

*In re Vivendi Universal, S.A. Securities Litigation*, No. 02-cv-5571 (RJH)(HBP) (S.D.N.Y.).

*SEC v. Vivendi Universal, S.A., et al.,* Case No. 02 Civ. 5571 (RJH) (HBP) (S.D.N.Y.). In this case, GCG was engaged by a distribution agent appointed by the SEC to perform the Notice and administration work related to the settlement. The Notice program included publication in 11 different countries and eight different languages. The engagement involved a full range of services, from design and printing of the notice and claim packets through claims processing, and ultimately distribution.  The multi-lingual internet site can be found at www.vivendisecsettlement.com.  A key feature of that website is the ability for class members to file claims online in any of the relevant languages.  This approach is particularly unique in the securities context.

*In re: Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VV) (E.D.N.Y.).

*Berger, et al., v. Property ID Corporation, et al.*, No. CV 05-5373-GHK (CWx) (C.D.Cal.).

*Howard A. Engle, M.D., et al., v. R.J. Reynolds Tobacco Co., Philip Morris, Inc., Brown & Williamson Tobacco Corp.,* No. 94-08273 CA (22) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re Royal Dutch/Shell Transport Securities Litigation,* No. 04 Civ. 374 (JAP) (Consolidated Cases) (D. N.J.).

*In re: Epson Cartridge Cases, Judicial Council Coordination Proceeding*, No. 4347 (Sup. Ct. of Cal., County of Los Angeles).

*UAW v. General Motors Corporation*, No: 05-73991 (E.D.MI).

*Wicon, Inc. v. Cardservice Intern'l, Inc.*, BC 320215 (Sup. Ct. of Cal., County of Los Angeles).

*In re: SmithKline Beecham Clinical Billing Litig.*, No. CV. No. 97-L-1230 (Third Judicial Cir., Madison County, Ill.).  Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning billings for clinical laboratory testing services.

*MacGregor v. Schering-Plough Corp.,* No. EC248041 (Sup. Ct. Cal., County of Los Angeles).  This nationwide notification program was designed to reach all persons who had purchased or used an aerosol inhaler manufactured by Schering-Plough.   Because no mailing list was available, notice was accomplished entirely through the media program.

*In re: Swiss Banks Holocaust Victim Asset Litig.*, No. CV-96-4849 (E.D.N.Y.).  Ms. Finegan managed the design and implementation of the Internet site on this historic case.  The site was developed in 21 native languages.  It is a highly secure data gathering tool and information hub, central to the global outreach program of Holocaust survivors. www.swissbankclaims.com.

*In re: Exxon Valdez Oil Spill Litig.*, No. A89-095-CV (HRH) (Consolidated) (D. Alaska).  Ms. Finegan designed and implemented two media campaigns to notify native Alaskan residents, trade workers, fisherman, and others impacted by the oil spill of the litigation and their rights under the settlement terms.

*In re: Johns-Manville Phenolic Foam Litig.*, No. CV 96-10069 (D. Mass).  The nationwide multi-media legal notice program was designed to reach all Persons who owned any structure, including an industrial

building, commercial building, school, condominium, apartment house, home, garage or other type of structure located in the United States or its territories, in which Johns-Manville PFRI was installed, in whole or in part, on top of a metal roof deck.

*Bristow v Fleetwood Enters Litig.*, No Civ 00-0082-S-EJL (D. Id).   Ms. Finegan designed and implemented a legal notice campaign targeting present and former employees of Fleetwood Enterprises, Inc., or its subsidiaries who worked as hourly production workers at Fleetwood's housing, travel trailer, or motor home manufacturing plants. The comprehensive notice campaign included print, radio and television advertising.

*In re: New Orleans Tank Car Leakage Fire Litig.*, No 87-16374 (Civil Dist. Ct., Parish of Orleans, LA) (2000). This case resulted in one of the largest settlements in U.S. history.  This campaign consisted of a media relations and paid advertising program to notify individuals of their rights under the terms of the settlement.

*Garria Spencer v. Shell Oil Co.*, No. CV 94-074(Dist. Ct., Harris County, Tex.).   The nationwide notification program was designed to reach individuals who owned real property or structures in the United States which contained polybutylene plumbing with acetyl insert or metal insert fittings.

*In re: Hurd Millwork Heat Mirror™ Litig.*, No. CV-772488 (Sup. Ct. of Cal., County of Santa Clara). This nationwide multi-media notice program was designed to reach class members with failed heat mirror seals on windows and doors, and alert them as to the actions that they needed to take to receive enhanced warranties or window and door replacement.

*Laborers Dist. Counsel of Alabama Health and Welfare Fund v. Clinical Lab. Servs., Inc*, No. CV–97-C-629-W (N.D. Ala.). Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning alleged billing discrepancies for clinical laboratory testing services.

*In re: StarLink Corn Prods. Liab. Litig.*, No. 01-C-1181 (N.D. Ill)..   Ms. Finegan designed and implemented a nationwide notification program designed to alert potential class members of the terms of the settlement.

*In re: MCI Non-Subscriber RatePayers Litig.*, MDL Docket No. 1275, 3:99-cv-01275 (S.D.Ill.).   The advertising and media notice program, found to be "more than adequate" by the Court, was designed with the understanding that the litigation affected all persons or entities who were customers of record for telephone lines presubscribed to MCI/World Com, and were charged the higher non-subscriber rates and surcharges for direct-dialed long distance calls placed on those lines. www.rateclaims.com.

*In re: Albertson's Back Pay Litig.*, No. 97-0159-S-BLW (D.Id.). Ms. Finegan designed and developed a secure Internet site, where claimants could seek case information confidentially.

*In re: Georgia Pacific Hardboard Siding Recovering Program*, No. CV-95-3330-RG (Cir. Ct., Mobile County, Ala.).  Ms. Finegan designed and implemented a multi-media legal notice program, which was designed to reach class members with failed G-P siding and alert them of the pending matter. Notice was provided through advertisements which aired on national cable networks, magazines of nationwide distribution, local newspaper, press releases and trade magazines.

*In re: Diet Drugs* (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig., Nos. 1203, 99-20593.  Ms. Finegan worked as a consultant to the National Diet Drug Settlement Committee on notification issues.  The resulting notice program was described and complimented at length in the Court's Memorandum and Pretrial Order 1415, approving the settlement,

*In re: Diet Drugs* **(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.**, 2000 WL 1222042, Nos. 1203, 99-20593 (E.D.Pa. Aug. 28, 2002).

Ms. Finegan designed the Notice programs for multiple state antitrust cases filed against the Microsoft Corporation.  In those cases, it was generally alleged that Microsoft unlawfully used anticompetitive means to maintain a monopoly in markets for certain software, and that as a result, it overcharged consumers who licensed its MS-DOS, Windows, Word, Excel and Office software. The multiple legal notice programs designed by Jeanne Finegan and listed below targeted both individual users and business users of this software.  The scientifically designed notice programs took into consideration both media usage habits and demographic characteristics of the targeted class members.

*In re: Florida Microsoft Antitrust Litig. Settlement*, No. 99-27340 CA 11 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Montana Microsoft Antitrust Litig. Settlement*, No. DCV 2000 219 (First Judicial Dist. Ct., Lewis & Clark Co., Mt.).

*In re: South Dakota Microsoft Antitrust Litig. Settlement*, No. 00-235(Sixth Judicial Cir., County of Hughes, S.D.).

*In re: Kansas Microsoft Antitrust Litig. Settlement*, No. 99C17089 Division No. 15 Consolidated Cases (Dist. Ct., Johnson County, Kan.) ("The Class Notice provided was the best notice practicable under the circumstances and fully complied in all respects with the requirements of due process and of the Kansas State. Annot. §60-22.3.").

*In re: North Carolina Microsoft Antitrust Litig. Settlement*, No. 00-CvS-4073 (Wake) 00-CvS-1246 (Lincoln) (General Court of Justice Sup. Ct., Wake and Lincoln Counties, N.C.).

*In re: ABS II Pipes Litig.*, No. 3126 (Sup. Ct. of Cal., Contra Costa County). The Court approved regional notification program designed to alert those individuals who owned structures with the pipe that they were eligible to recover the cost of replacing the pipe.

*In re: Avenue A Inc. Internet Privacy Litig.*, No: C00-1964C (W.D. Wash.).

*In re: Lorazepam and Clorazepate Antitrust Litig.*, No. 1290 (TFH) (D.C.C.).

*In re: Providian Fin. Corp. ERISA Litig.*, No C-01-5027 (N.D. Cal.).

*In re: H & R Block., et al Tax Refund Litig.*, No. 97195023/CC4111 (Maryland Cir. Ct., Baltimore City).

*In re: American Premier Underwriters, Inc, U.S. Railroad Vest Corp.*, No. 06C01-9912 (Cir. Ct., Boone County, Ind.).

*In re: Sprint Corp. Optical Fiber Litig.*, No: 9907 CV 284 (Dist. Ct., Leavenworth County, Kan).

*In re: Shelter Mutual Ins. Co. Litig.*, No. CJ-2002-263 (Dist.Ct., Canadian County. Ok).

*In re: Conseco, Inc. Sec. Litig.*, No: IP-00-0585-C Y/S CA (S.D. Ind.).

*In re: Nat'l Treasury Employees Union, et al.*, 54 Fed. Cl. 791 (2002).

*In re: City of Miami Parking Litig.*, Nos. 99-21456 CA-10, 99-23765 – CA-10 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Prime Co. Incorporated D/B/A/ Prime Co. Personal Comm.*, No. L 1:01CV658 (E.D. Tx.).

*Alsea Veneer v. State of Oregon A.A.*, No. 88C-11289-88C-11300.


## BANKRUPTCY EXPERIENCE

Ms. Finegan has designed and implemented hundreds of domestic and international bankruptcy notice programs.  A sample case list includes the following:

*In re: General Motors Corp. et al*, No. 09-50026 (Bankr. S.D.N.Y.).  This case is the 4th largest bankruptcy in U.S. history.  Ms. Finegan and her team worked with General Motors restructuring attorneys to design and implement the legal notice program.

*In re: ACandS, Inc.,* No. 0212687 (Bankr. D.Del.) (2007) (*"Adequate notice of the Motion and of the hearing on the Motion was given."*).

*In re: United Airlines*, No. 02-B-48191 (Bankr. N.D Ill.).  Ms. Finegan worked with United and its restructuring attorneys to design and implement global legal notice programs.  The notice was published in 11 countries and translated into 6 languages. Ms. Finegan worked closely with legal counsel and UAL's advertising team to select the appropriate media and to negotiate the most favorable advertising rates. www.pd-ual.com.

*In re: Enron*, No. 01-16034 (Bankr. S.D.N.Y.).  Ms. Finegan worked with Enron and its restructuring attorneys to publish various legal notices.

*In re: Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.).  Ms. Finegan originally designed the information website.  This Internet site is a major information hub that has various forms in 15 languages.

*In re: Harnischfeger Inds.*, No. 99-2171 (RJW) Jointly Administered (Bankr. D. Del.).  Ms. Finegan designed and implemented 6 domestic and international notice programs for this case. The notice was translated into 14 different languages and published in 16 countries.

*In re: Keene Corp.*, No. 93B 46090 (SMB), (Bankr. E.D. MO.).  Ms. Finegan designed and implemented multiple domestic bankruptcy notice programs including notice on the plan of reorganization directed to all creditors and all Class 4 asbestos-related claimants and counsel.

*In re: Lamonts*, No. 00-00045 (Bankr. W.D. Wash.).  Ms. Finegan designed an implemented multiple bankruptcy notice programs.

*In re: Monet Group Holdings*, Nos. 00-1936 (MFW) (Bankr. D. Del.).  Ms. Finegan designed and implemented a bar date notice.

*In re: Laclede Steel Co.*, No. 98-53121-399 (Bankr. E.D. MO.).  Ms. Finegan designed and implemented multiple bankruptcy notice programs.

*In re: Columbia Gas Transmission Corp.*, No. 91-804 (Bankr. S.D.N.Y.).  Ms. Finegan developed multiple nationwide legal notice notification programs for this case.

*In re: U.S.H. Corp. of New York, et al.* (Bankr. S.D.N.Y). Ms. Finegan designed and implemented a bar date advertising notification campaign.

*In re: Best Prods. Co., Inc.*, No. 96-35267-T, (Bankr. E.D. Va.). Ms. Finegan implemented a national legal notice program that included multiple advertising campaigns for notice of sale, bar date, disclosure and plan confirmation.

*In re: Lodgian, Inc., et al.*, No. 16345 (BRL) Factory Card Outlet – 99-685 (JCA), 99-686 (JCA) (Bankr. S.D.N.Y).

*In re: Internat'l Total Servs, Inc., et al.*, Nos. 01-21812, 01-21818, 01-21820, 01-21882, 01-21824, 01-21826, 01-21827 (CD) Under Case No: 01-21812 (Bankr. E.D.N.Y).

*In re: Decora Inds., Inc. and Decora, Incorp.*, Nos. 00-4459 and 00-4460 (JJF) (Bankr. D. Del.).

*In re: Genesis Health Ventures, Inc., et al*, No. 002692 (PJW) (Bankr. D. Del.).

*In re: Tel. Warehouse, Inc., et al*, No. 00-2105 through 00-2110 (MFW) (Bankr. D. Del.).

*In re: United Cos. Fin. Corp., et al*, No. 99-450 (MFW) through 99-461 (MFW) (Bankr. D. Del.).

*In re: Caldor, Inc. New York, The Caldor Corp., Caldor, Inc. CT, et al.*, No. 95-B44080 (JLG) (Bankr. S.D.N.Y).

*In re: Physicians Health Corp., et al.*, No. 00-4482 (MFW) (Bankr. D. Del.).

*In re: GC Cos., et al.*, Nos. 00-3897 through 00-3927 (MFW) (Bankr. D. Del.).

*In re: Heilig-Meyers Co., et al.*, Nos. 00-34533 through 00-34538 (Bankr. E.D. Va.).

## PRODUCT RECALL AND CRISIS COMMUNICATION

*Reser's Fine Foods.* Reser's is a nationally distributed brand and manufacturer of food products through giants such as Albertsons, Costco, Food Lion, WinnDixie, Ingles, Safeway and Walmart. Ms. Finegan designed an enterprise-wide crisis communication plan that included communications objectives, crisis team roles and responsibilities, crisis response procedures, regulatory protocols, definitions of incidents that require various levels of notice, target audiences, and threat assessment protocols. Ms. Finegan worked with the company through two nationwide, high profile recalls, conducting extensive media relations efforts.

## ARTICLES

Quoted Expert, "Communication Technology Trends Pose Novel Notification Issues for Class Litigators," BNA Electronic Commerce and Law, 15 ECLR 109 1/27/2010.

Author, "Legal Notice: R U ready 2 adapt?" BNA Class Action Report, Vol. 10 Class 702, 7/24/2009.

Author, "On Demand Media Could Change the Future of Best Practicable Notice," BNA Class Action Litigation Repot, Vol. 9, No. 7, 4/11/2008, pp. 307-310.

Quoted Expert, "Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty," Warranty Week, warrantyweek.com/archive/ww20070228.html/ February 28, 2007.

Co-Author, "Approaches to Notice in State Court Class Actions," For The Defense, Vol. 45, No. 11, November, 2003.

Citation, "Recall Effectiveness Research: A Review and Summary of the Literature on Consumer Motivation and Behavior," U.S. Consumer Product Safety Commission, CPSC-F-02-1391, p.10, Heiden Associates, July 2003.

Author, "The Web Offers Near, Real-Time Cost Efficient Notice," American Bankruptcy Institute, ABI Journal, Vol. XXII, No. 5., 2003.

Author, "Determining Adequate Notice in Rule 23 Actions," For The Defense, Vol. 44, No. 9, September, 2002.

Author, "Legal Notice, What You Need To Know and Why," Monograph, July 2002.

Co-Author, "The Electronic Nature of Legal Noticing," The American Bankruptcy Institute Journal, Vol. XXI, No. 3, April 2002.

Author, "Three Important Mantras for CEO's and Risk Managers in 2002," International Risk Management Institute, irmi.com, January 2002.

Co-Author, "Used the Bat Signal Lately," The National Law Journal, Special Litigation Section, February 19, 2001.

Author, "How Much is Enough Notice," Dispute Resolution Alert, Vol. 1, No. 6. March 2001.

Author, "Monitoring the Internet Buzz," The Risk Report, Vol. XXIII, No. 5, Jan. 2001.

Author, "High-Profile Product Recalls Need More Than the Bat Signal," International Risk Management Institute, irmi.com, July 2001.

Co-Author, "Do You Know What 100 Million People are Buzzing About Today?" Risk and Insurance Management, March 2001.

Quoted Article, "Keep Up with Class Action," Kentucky Courier Journal, March 13, 2000.

Author, "The Great Debate - How Much is Enough Legal Notice?" American Bar Association – Class Actions and Derivatives Suits Newsletter, Winter edition 1999.

## SPEAKER/EXPERT PANELIST/PRESENTER

| | |
|---|---|
| Consumer Attorneys of San Diego (CASD) | Faculty Panelist, "The Future of Notice." 2nd Annual Class Action Symposium CASD Symposium, San Diego California, October 2009. |
| American Bar Association | Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements: The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard." |

|  | Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008. |
|---|---|
| Women Lawyers Association of Los Angeles | Faculty Panelist, Women Lawyers Association of Los Angeles (WLALA) CLE Presentation, "The Anatomy of a Class Action."  Los Angeles, CA, February, 2008. |
| Warranty Chain Management | Faculty Panelist, Presentation Product Recall Simulation.   Tampa, Florida, March 2007. |
| Practicing Law Institute | Faculty Panelist, CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures – Evolving Notice Standards in the Internet Age.  New York/Boston (simulcast), NY March 2006; Chicago, IL April 2006 and San Francisco, CA, May 2006. |
| U.S. Consumer Product Safety Commission | Ms. Finegan participated as an expert panelist to the Consumer Product Safety Commission to discuss ways in which the CPSC could enhance and measure the recall process. As a panelist, Ms Finegan discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts.  Bethesda MD, September 2003. |
| Weil, Gotshal & Manges | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." New York, June 2003. |
| Sidley & Austin | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." Los Angeles, May 2003. |
| Kirkland & Ellis | Speaker to restructuring group addressing "The Best Practicable Methods to Give Notice in a Tort Bankruptcy." Chicago, April 2002. |
| Georgetown University Law Center Mass Tort Litigation Institute | Faculty, CLE White Paper: "What are the best practicable methods to give notice?   Dispelling the communications myth – A notice disseminated is a notice communicated," Mass Tort Litigation Institute. Washington D.C., November, 2001. |
| American Bar Association | Presenter, "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits. Chicago, IL, August 6, 2001. |
| McCutchin, Doyle, Brown & Enerson | Speaker to litigation group in San Francisco and simulcast to four other McCutchin locations, addressing the definition of effective notice and barriers to communication that affect due process in legal notice. San Francisco, CA, June 2001. |
| Marylhurst University | Guest lecturer on public relations research methods. Portland, OR, February 2001. |

| University of Oregon | Guest speaker to MBA candidates on quantitative and qualitative research for marketing and communications programs. Portland, OR, May 2001. |
| Judicial Arbitration & Mediation Services (JAMS) | Speaker on the definition of effective notice.  San Francisco and Los Angeles, CA, June 2000. |
| International Risk Management Institute | Past Expert Commentator on Crisis and Litigation Communications. www.irmi.com. |
| The American Bankruptcy Institute Journal (ABI) | Past Contributing Editor – Beyond the Quill. www.abi.org. |

## BACKGROUND

Prior to joining The Garden City Group, Inc., Ms. Finegan co-founded Huntington Advertising, a nationally recognized leader in legal notice communications.  After Fleet Bank purchased her firm in 1997, she grew the company into one of the nation's leading legal notice communication agencies.

Prior to that, Ms. Finegan spearheaded Huntington Communications, (an Internet development company) and The Huntington Group, Inc., (a public relations firm).  As a partner and consultant, she has worked on a wide variety of client marketing, research, advertising, public relations and Internet programs.  During her tenure at the Huntington Group, client projects included advertising (media planning and buying), shareholder meetings, direct mail, public relations (planning, financial communications) and community outreach programs. Her past client list includes large public and privately held companies: Code-A-Phone Corp., Thrifty-Payless Drug Stores, Hyster-Yale, The Portland Winter Hawks Hockey Team, U.S. National Bank, U.S. Trust Company, Morley Capital Management, and Durametal Corporation.

Prior to Huntington Advertising, Ms. Finegan worked as a consultant and public relations specialist for a West Coast-based Management and Public Relations Consulting firm.

Additionally, Ms. Finegan has experience in news and public affairs. Her professional background includes being a reporter, anchor and public affairs director for KWJJ/KJIB radio in Portland, Oregon, as well as reporter covering state government for KBZY radio in Salem, Oregon. Ms. Finegan worked as an assistant television program/promotion manager for KPDX directing $50 million in programming.  She was also the program/promotion manager at and KECH-22 television.

Ms. Finegan's multi-level communication background gives her a thorough, hands-on understanding of media, the communication process, and how it relates to creating effective and efficient legal notice campaigns.

## MEMBERSHIPS AND PROFESSIONAL CREDENTIALS

**APR - Accredited Public Relations** - The Universal Board of Accreditation Public Relations Society of America

**Member of the Public Relations Society of America**

**Member Canadian Public Relations Society**